In re Zdenek **KIESLICH** and, Susan A. Kieslich, Debtors.

Zdenek **Kieslich** and, Susan A. Kieslich, Plaintiffs–Appellees,

v.

**United States of America,** Defendant–Appellant.

No. CV–N–98–0713 DWH (RAM).

United States District Court, D. Nevada.

Sept. 28, 1999.

Kevin Mirch, Reno, NV, for plaintiffs.

Kathryn E. Landreth, U.S. Attorney, Reno, NV, Keith S. Blair, Trial Attorney Tax Division, U.S. Department of Justice, Washington, DC, for defendant.

1.  It is noted that plaintiff Susan A. Kieslich is not a party to this appeal. As part of her settlement agreement with the government,

## ORDER

HAGEN, District Judge.

Before the court is an appeal (# 4) from the United States Bankruptcy Court for the District of Nevada. Appellant United States has filed an Opening Brief (# 15). Appellee Zdenek Kieslich has filed an Answering Brief (# 22).[1] Appellant filed a Reply Brief (# 24). For the reasons stated below, the court remands this case to the bankruptcy court with instructions to 1) vacate its Orders, dated March 19, 1993, October 7, 1996, and November 20, 1998; and 2) dismiss this adversary proceeding for lack of subject matter jurisdiction.

### Standard of Review

 The court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 158. The court reviews the bankruptcy court's decision by applying the clearly erroneous standard to findings of fact and the *de novo* standard to conclusions of law. See *In re Park–Helena Corp.*, 63 F.3d 877, 880 (9th Cir.1995), *cert. denied sub nom., Neben & Starrett, Inc. v. Chartwell Financial Corp.*, 516 U.S. 1049, 116 S.Ct. 712, 133 L.Ed.2d 667 (1996). The court reviews the bankruptcy court's decision to retain jurisdiction for abuse of discretion. See *In re Carraher*, 971 F.2d 327, 328 (9th Cir.1992).

### Introduction

The United States appeals from three bankruptcy court orders. The first Order, entered March 19, 1993, determined appellee properly characterized and reported embezzled proceeds on his 1984 income tax return and further found he "transposed" certain figures on that return so that he was entitled to a loss rather than the gain he originally reported. See Opening Brief (# 15), Ex. 20. The second Order, entered October 7, 1996, held a statutory notice of deficiency mailed to appellee qualified as an informal proof of claim for bankruptcy purposes; the government had the burden

Ms. Kieslich dismissed her complaint against the United States on August 1, 1995. See Opening Brief (# 15) at 1.

of proof at trial; and appellee submitted sufficient evidence to rebut the validity of what the bankruptcy court characterized as the United States's informal proof of claim. *Id.,* Ex. 10. The third and final Order, entered November 20, 1998, found the bankruptcy court properly retained jurisdiction over the adversary proceeding after the underlying bankruptcy case had closed. *Id.,* Ex. 2.

The United States filed a timely Notice of Appeal from all three Orders on November 30, 1998. *Id.,* Ex. 1.

### Procedural History

In 1986, appellee filed for Chapter 7 bankruptcy. On June 6, 1990, appellee initiated an adversary proceeding in the bankruptcy court which sought a determination of tax liability for the years 1984 and 1985 since the Internal Revenue Service ("IRS") assessed federal income tax deficiencies and penalties for that period. On June 12, 1992, a Final Decree was entered in the underlying Chapter 7 bankruptcy and the case was closed. *Id.,* Ex. 10, p. 3. All that remained was the adversary proceeding. Almost six months later, the parties then filed cross-motions for partial summary judgment. *Id.,* Exs. 21–29. Following briefing and argument, the bankruptcy court granted appellee's motion and eventually denied appellant's Motion for Reconsideration. *Id.,* Ex. 20 (Order for Partial Summary Judgment); Exs. 16–19 (Denial of Motion For Reconsideration).

In August of 1995, the remaining issues were tried to the bankruptcy court. *Id.,* Ex. 11. Specifically, the trial focused on whether appellee could substantiate a number of income tax deductions the IRS had disallowed. *Id.,* Ex. 13. On October 7, 1996, the bankruptcy court entered its decision in favor of appellee. *Id.,* Ex. 10.

The United States appealed this decision to the United States District Court for the District of Nevada. Pursuant to a Minute Order dated January 20, 1998, Judge Reed ordered the October 7, 1996 decision vacat-

ed and remanded the case for the limited purpose of determining the existence of subject matter jurisdiction. *Id.,* Ex. 7. Judge Reed's concerns primarily focused on the uncertainty of how the adversary proceeding was "related to" the underlying bankruptcy case. *Id.* at 1. Judge Reed noted that the appellee's Chapter 7 bankruptcy was closed in 1992, yet the adversary proceeding was not decided until 1996. *Id.* Moreover, he questioned the fact that the decision apparently did not depend in any way on bankruptcy law. *Id.* Expressing his skepticism, Judge Reed wrote:

How [the adversary proceeding] is related to the bankruptcy case is a crucial question, however, since the Bankruptcy Court's subject matter jurisdiction is evidently determined by whether this action is a "core proceeding," a "non-core proceeding," or neither. *Eastport Associates v. City of Los Angeles (In re Eastport Associates),* 935 F.2d 1071, 1077 & n. 4 (9th Cir.1991). Initially, Plaintiffs asserted that this case was a core proceeding; Defendant expressed no opinion on the subject. *Compare* Complaint at ¶ 3 (CR 1) *with* Answer at ¶ 3 (CR 2). By the time of trial, both sides had stipulated that this was a non-core proceeding and that the Bankruptcy Court would enter final judgment pursuant to 28 U.S.C. § 157(c)(2). Pl.'s Trial Br. at 2 (CR 16); Def.'s Trial Br. at 3 (CR 15). However, neither party suggested prior to the present appeal that this case lay entirely outside the Bankruptcy Court's jurisdiction.

Defendant has now made such a suggestion, and consequently argues that the Bankruptcy Court lacked subject matter jurisdiction and that its Order (CR 19) of October 7, 1996 disposing of this case is a nullity. Contrary to Plaintiffs' assertion in their Opposition (# 9), the parties may not stipulate to subject matter jurisdiction. *Holman v. Laulo–Rowe Agency,* 994 F.2d 666, 668 n. 1 (9th Cir.1993). Neither does the fact that the Bankruptcy Court properly ex-

ercised jurisdiction at the time the instant proceeding was filed necessarily mean that it properly retained jurisdiction after the Chapter 7 case was closed. *Elias v. Lisowski Law Firm (In re Elias),* 215 B.R. 600 (9th Cir. BAP 1997) (bankruptcy court has power to interpret orders entered prior to dismissal of underlying case, but not to grant new relief in a case that has been dismissed); *Tsafaroff v. Taylor (In re Taylor),* 884 F.2d 478, 481–82 (9th Cir.1989) ("[t]he bankruptcy court does not have jurisdiction ... to grant new relief independent of its prior rulings once the underlying action has been dismissed"); see also *Caterpillar Inc. v. Lewis,* 519 U.S. 61, 117 S.Ct. 467, 474, 136 L.Ed.2d 437 (1996) (absence of subject matter jurisdiction at time of judgment nullifies judgment) (citing *American Fire & Casualty Co. v. Finn,* 341 U.S. 6, 17–18, 71 S.Ct. 534, 95 L.Ed. 702 (1951)).

The argument is therefore colorably meritorious, and should have been presented to the Bankruptcy Court. Because this issue apparently turns on whether we characterize this case as core, non-core, or other—a fact-sensitive characterization best performed by the Bankruptcy Court in the first instance— we think it best to remand the question. See *State ex rel. Roberts v. Mushroom King, Inc.,* 77 B.R. 813, 820 (D.Or.1987) ("The court must determine related case jurisdiction following a case-by-case consideration of the facts of the controversy at hand and those surrounding the entire bankruptcy proceeding."). Although we may resolve the issue ourselves, we need not, since 28 U.S.C. § 157(d) may provide us subject matter jurisdiction even though the Bankruptcy Court lacks it. We therefore remand this action to the Bankruptcy Court to permit it to determine its own subject matter jurisdiction. See *Pentax Corp. v. Myhra,* 72 F.3d 708, 711 (9th Cir.1995) (transferring case to Court of International Trade to permit that court to examine its own jurisdiction).

*Id.,* Ex. 7 at 2–3.

On remand, in its November 20, 1998 Order, the bankruptcy court specifically considered the jurisdictional issue and found it properly retained jurisdiction over the adversary proceeding after the underlying bankruptcy case was closed. *Id.,* Ex. 2. Relying on *In re Morris,* 950 F.2d 1531 (3rd Cir.1992), and *In re Fietz,* 852 F.2d 455 (9th Cir.1988), the bankruptcy court first determined it could retain jurisdiction over a related adversary proceeding even though the underlying bankruptcy case had been dismissed. The bankruptcy court next examined whether the two cases were "related." Finding in the affirmative, the bankruptcy court reasoned that the adversary proceeding could have potentially affected the bankruptcy estate at the time it was filed. The bankruptcy court next shifted its analysis to the considerations of judicial economy, convenience, and fairness. The bankruptcy court found these considerations favored retention. Therefore, the bankruptcy court determined it had proper subject matter jurisdiction to hear the case and issue its orders, despite the closure of the underlying bankruptcy.

The United States now appeals this November 20th Order, among others, and raises seven issues for the court's review. *See* Opening Brief (# 15) at 2. However, the court need only address the first issue since it is dispositive of the case. See also *In re Elias,* 215 B.R. 600, 604 (9th Cir. BAP 1997) (federal courts are prohibited from rendering advisory opinions) (citing *Muskrat v. United States,* 219 U.S. 346, 31 S.Ct. 250, 55 L.Ed. 246 (1911); *American State Bank v. Marks (In re MacNeil),* 907 F.2d 903, 904 (9th Cir.1990)). The issue being whether the bankruptcy court had subject matter jurisdiction to decide the adversary proceeding after the underlying bankruptcy case was closed by final decree. As demonstrated below, the court finds no such jurisdiction existed.

## Analysis

■ "A federal court has a continuing obligation to consider the appropriateness of retaining jurisdiction throughout the course of the proceeding." *In re Casamont*, 196 B.R. 517, 525 (9th Cir. BAP 1996) (citing *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988)). The district court is once again presented on appeal with the jurisdictional question of whether the bankruptcy court properly retained jurisdiction over the adversary proceeding after the underlying bankruptcy case was closed. In its first dealing with this issue, the court reserved decision but expressed skepticism as to the bankruptcy court's retention. The court now revisits this jurisdictional matter and finds the bankruptcy court abused its discretion.

### I. *Stipulation & Waiver*

■ Before addressing the substance of this jurisdictional question, the court briefly addresses some of appellee's unpersuasive arguments. Appellee first contends the bankruptcy court properly retained jurisdiction because the United States not only admitted jurisdiction was proper but consented to the same. *See* Answering Brief (# 22) at 5, 6. Appellee has been told once and is now told twice the parties' stipulation that the adversary proceeding was non-core did not confer the bankruptcy court with subject matter jurisdiction. *See* Opening Brief (# 15), Ex. 7, p. 2 (Judge Reed's Order stating "the parties may not stipulate to subject matter jurisdiction"). It is well-established that parties to a federal civil action cannot stipulate to and create subject matter jurisdiction where none exists. See *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986); see also *Norton Bankruptcy Law and Practice 2d*, § 4:1 at p. 4–4 ("Subject matter jurisdiction of cases and proceed-ings in bankruptcy may be conferred on federal courts solely by Acts of Congress, not by . . . consent of the parties.").

■ Moreover, appellee appears to be arguing since appellant participated without objection in the adversarial proceeding, it has waived its right to bring this jurisdictional challenge. *See* Answering Brief (# 22) at 4. Appellee, however, should be well aware of the basic principle that subject matter jurisdiction cannot be created by waiver or consent. See *Norton Bankruptcy Law and Practice 2d*, § 4:1 at 4–9. In fact, the argument that a court lacks subject matter jurisdiction may be raised by either party or the court at any time; even for the first time on appeal. See *Attorneys Trust v. Videotape Computer Products, Inc.*, 93 F.3d 593, 594–95 (9th Cir.1996); *Morongo Band of Mission Indians v. Calif. State Board of Equalization*, 858 F.2d 1376, 1380 (9th Cir.1988) (lack of jurisdiction can be raised at any stage of the proceeding). In sum, the court rejects the above arguments raised by appellee in his Answering Brief.

### II. *Subject Matter Jurisdiction*

■ "The jurisdiction of the bankruptcy courts, like that of other courts, is grounded in and limited by statute." *In re Casamont*, 196 B.R. at 521 (citing *Celotex Corp. v. Edwards*, 514 U.S. 300, 115 S.Ct. 1493, 1498, 131 L.Ed.2d 403 (1995)). Therefore, when an adversary proceeding is filed, the bankruptcy court is required to determine, *sua sponte* or on timely motion of a party, whether the proceeding is either "core" or "non-core." [2] *See* 28 U.S.C. § 157(b)(3). If it is a "non-core" proceeding, the bankruptcy court must then determine if it is "related to" a case under the bankruptcy code. *Id.* These determinations are essential in deciding whether or not the bankruptcy court has subject mat-

---

**2.** This determination is made on a case-by-case basis, guided by the statute's non-exclu-sive list. *See* 28 U.S.C. § 157(b)(2)(A)–(O).

ter jurisdiction.[3] For example, if a proceeding is "non-core" but not "related to" the underlying bankruptcy case, the bankruptcy court would not have subject matter jurisdiction over the proceeding. By statute, the bankruptcy court's jurisdiction extends at its most remote nexus only to proceedings which are "related to" a bankruptcy case. See 28 U.S.C. § 157(a); 9 AMJUR. BANKR. § 467 (1991).

In the instant case, the bankruptcy court, in its November 20th Order, recognized this was a "non-core" proceeding and further determined that the adversary proceeding was "related to" the underlying bankruptcy case. The bankruptcy court reached this decision because it believed the adversary proceeding could have potentially affected the bankruptcy estate at the time it was filed. See *In re Fietz*, 852 F.2d 455 (9th Cir.1998). The court now reviews this decision as it begins its jurisdictional analysis.

**A. "Related to" Jurisdiction**

■■■■■ The definition of "related to" jurisdiction has historically come under much debate. It was not until the Supreme Court provided an extensive discussion of the scope of "related to" jurisdiction in *Celotex v. Edwards,* 514 U.S. 300, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995), that the circuits were given some clear guidance. The *Celotex* Court cited with approval the standard formulated by the Third Circuit in *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3rd Cir.1984), which now has been adopted by the First, Fourth, Sixth, Eighth, Ninth, Tenth and Eleventh Circuits. *Id.* at 1499, n. 6. This standard is as follows:

> The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.

Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate.

*Pacor, Inc.,* 743 F.2d at 994.

The Ninth Circuit, in *In re Fietz,* 852 F.2d 455, 457 (9th Cir.1988), essentially adopted the *Pacor* standard defining "related to" jurisdiction in this circuit. *In re Fietz* has been interpreted and applied on numerous occasions by both the circuit itself, as well as the circuit's bankruptcy appellate panel ("BAP"). For example, the BAP applied the *Pacor/Fietz* reasoning in *In re Casamont* holding "[a]n action is 'related to' a bankruptcy case if the outcome of the proceedings could conceivably alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) in such a way as to impact on the administration of the bankruptcy estate." 196 B.R. at 521. Moreover, the *In re Casamont* court further relied on *In re Fietz* holding "jurisdiction is determined a[t] the commencement of the action." *Id.* (citing *In re Fietz,* 852 F.2d at 457, n. 2).

■■■■ Applying the above Ninth Circuit precedent to the case at bar, the court affirms the bankruptcy court's initial decision to invoke jurisdiction over the adversary proceeding. The court agrees that the adversary proceeding was "related to" the underlying bankruptcy case at the time it was filed. When appellee filed his adversary complaint, the bankruptcy case was still open and the final decree was not yet confirmed. Moreover, appellee sought a determination of tax liability for the years 1984 and 1985, which if found against him, could have certainly affected the administration of the bankruptcy es-

---

**3.** It is also important in determining whether the bankruptcy court can enter a final order or must submit proposed findings of fact and conclusions of law to the district court for *de novo* review.

tate. Thus, as in *In re Casamont*, the court finds under the *Pacor/Fietz* test that the adversary proceeding was "related to" the underlying bankruptcy case.

The problem lies, however, in determining whether subject matter jurisdiction still existed after the underlying bankruptcy was closed. In other words, the issue here is not whether the bankruptcy court properly invoked jurisdiction over the adversary proceeding at the time it was filed; it is clear that it did. See *Casamont*, 196 B.R. at 521. The issue is whether the bankruptcy court properly retained such jurisdiction after the final decree was entered. *Id.* Therefore, following Ninth Circuit analysis, as set forth in *In re Casamont*, the court must now consider whether judicial economy, convenience, fairness, and comity[4] compelled the retention of jurisdiction. 196 B.R. 517 (the BAP considered judicial economy, convenience, fairness, and comity in determining whether the bankruptcy court properly retained jurisdiction over an adversary proceeding after the underlying bankruptcy was dismissed). If these considerations favored retention, subject matter jurisdiction existed and the bankruptcy court properly retained jurisdiction. However, if the reverse were true, subject matter jurisdiction ceased to exist and the court abused its discretion.

## B. Retention of Jurisdiction

A bankruptcy court's retention of jurisdiction over a related proceeding is subject to the considerations of judicial economy, convenience, and fairness.[5] See *In re Casamont*, 196 B.R. at 522. The weighing of these factors is discretionary. *Id.* at n. 3.

4. The Comity factor is not implicated by this adversary proceeding.

5. In determining whether bankruptcy courts abused their discretion by retaining jurisdiction over related proceedings, the Ninth Circuit and several other circuits have analogized to cases concerning the propriety of district courts retaining jurisdiction over pen-

■ On remand, the bankruptcy court recognized its obligation to consider these factors and determined they fell in favor of retaining jurisdiction. The court, however, finds the bankruptcy court erred in its analysis. The bankruptcy court clearly evaluated the factors from the wrong point in time. The same mistake committed by appellee in his Answering Brief. *See* Answering Brief (# 22) at 8–10.

In *In re Casamont*, the court looked back to the time of dismissal of the underlying bankruptcy to consider whether these factors favored retention. The bankruptcy court and appellee, on the other hand, mistakenly extended their analysis to the time of appeal. Both the bankruptcy court and appellee incorrectly point to all the litigation that has occurred up to the present time, instead of focusing on what occurred up to and before the underlying bankruptcy's closure. Therefore, the court finds the bankruptcy court applied the wrong standard when it agreed to retain jurisdiction over the appellee's adversary proceeding. Nevertheless, the court still examines this error to see if it was harmless.

■ Following the BAP's analysis in *In re Casamont*, the court reviews this case from the initiation of the adversary proceeding up until the closure of the underlying bankruptcy case to see if retention was appropriate. As demonstrated below, the court finds the considerations of judicial economy, convenience, and fairness did not favor retention at the time the final decree was entered. Therefore, this error was not harmless and the bankruptcy court abused its discretion by retaining jurisdiction.

dent state law claims after federal claims have been dismissed. This is the case because usually the adversary proceedings are based on state law. The court recognizes, however, that the instant adversary proceeding is federal in nature. Nevertheless, the court believes the same analysis still applies.

### 1. *Judicial Economy*

The first factor to be considered is judicial economy. As explained above, the bankruptcy court erred in its analysis. The bankruptcy court analyzed this case from the point of appeal, not from the time the final decree was entered. Thus, it is not surprising the bankruptcy court believed judicial economy was served by retaining jurisdiction. The bankruptcy court based its decision on the fact that substantial litigation had already occurred, including the completion of discovery and the adjudication of summary judgment motions. The bankruptcy court further reasoned that the parties actually litigated the matter to a point of final judgment.

If the time of appeal was the correct standard, the bankruptcy court's position would be persuasive. However, it is not. When the underlying bankruptcy case closed on June 12, 1992, the adversary proceeding had been pending for only two years. Compare *In re Casamont*, 196 B.R. 517, 523 (adversary proceeding pending two months at time of dismissal did not favor retention; retention of jurisdiction is improper when the initiation of the dispute is recent), with *In re Carraher*, 971 F.2d 327 (9th Cir.1992) (adversary proceeding pending six years at time of dismissal weighed in favor of retention); *In re Morris*, 950 F.2d 1531, 1534 (11th Cir.1992) (pending four years); *In re Smith*, 866 F.2d 576, 580 (3rd Cir.1989) (pending four years). During that time, the case was not substantially litigated, minimal discovery might have occurred, but it is clear no summary judgment motions were filed, nor was the trial even close to being commenced. Compare *In re Casamont*, 196 B.R. at 520 (no summary judgment motions filed at time of bankruptcy dismissal), with *In re Carraher*, 971 F.2d 327 (parties had substantially litigated action before dismissal and court invested its judicial resources); *In re Smith*, 866 F.2d 576. In fact, a final decision in the case was not entered until October 7, 1996. Almost four years *after* the underlying bankruptcy case was closed. Therefore, it cannot be said that judicial economy would have been achieved or was achieved by the bankruptcy court's retention of jurisdiction. The bankruptcy court should have realized that a more expedient resolution would have occurred in federal district court.

### 2. *Convenience*

The second factor to be considered is convenience to the parties. Once again, the bankruptcy court improperly over-extended its analysis to the time of appeal. The bankruptcy court found there would have been great inconvenience to the parties if jurisdiction was deferred to another forum, since a trial had been conducted and a decision was already rendered.

However, analyzing this factor from the time the underlying bankruptcy closed, the court finds if the bankruptcy court had declined jurisdiction, only a minimal inconvenience would have been imposed on the parties. As stated above, no summary judgment motions had yet been filed, some discovery might have resulted, but the case was still in its seminal stage, far from trial. Appellee could have merely re-filed his complaint in federal district court or any other appropriate forum. See, e.g., *In re Casamont*, 196 B.R. at 524. The court recognizes appellee might have had to pay the alleged income tax deficiency (depending on the forum) before his suit could have went forward, but what the bankruptcy court and appellee fail to realize is that the appellee was not deprived of an alternative forum for his claims. *See* Answering Brief (# 22) at 9 (appellee argues he would "[e]ffectively ... be denied a forum"); *see also* 26 U.S.C. § 7422. Other forums were present and the existence of or being faced with satisfying a jurisdictional prerequisite did not alone justify retention of jurisdiction.

As in *In re Casamont*, the litigation in the instant adversary proceeding was just beginning at the time of closure. 196 B.R. at 524. Therefore, the court finds the

inconvenience to the parties would have been slight and this factor disfavored retention.

### 3. *Fairness*

The last issue to be addressed is fairness. In line with its other reasonings, the bankruptcy court once again extended its analysis to the wrong point in time. Relying on *In re Carraher*, the bankruptcy court determined it would have been unfair to compel the parties to start over again in any court or administrative proceeding because of the advanced state of the litigation.

However, the bankruptcy court's reliance on *In re Carraher* is misplaced. In *In re Carraher*, the adversary proceeding dragged on for six years prior to dismissal of the underlying bankruptcy. Thus, it was not surprising the court believed "it would have been unfair to defendants to delay matters further by remanding the[ ] claims to state court...." 971 F.2d at 328; accord *Smith*, 866 F.2d at 580; *Morris*, 950 F.2d at 1535. Here, however, the adversary proceeding was pending only two years. This four year time difference weighed in favor of declining jurisdiction and *In re Carraher* is easily distinguished. Moreover, unlike *In re Carraher*, substantial litigation had not occurred in the instant adversary proceeding before the final decree was entered.

In sum, the court finds there would not have been any unfairness imposed if the bankruptcy court declined to exercise jurisdiction once the final decree was entered in the underlying bankruptcy. The concerns of the *In re Carraher* court were simply not present.

### Conclusion

Despite the court's agreement that the bankruptcy court properly exercised jurisdiction when the adversary proceeding was initially filed, the court finds the bankruptcy court abused its discretion in retaining such jurisdiction after the underlying bankruptcy case was closed. The court finds judicial economy, convenience, and fairness disfavored retention at the time the final decree was entered. Therefore, the court finds subject matter jurisdiction ceased to exist and the bankruptcy court improperly heard this case.

Accordingly, **IT IS ORDERED** that this case is *REMANDED* to the bankruptcy court with instructions to 1) *VACATE* its Orders of March 13, 1993, October 7, 1996, and November 20, 1998, and 2) *DISMISS* this adversary proceeding for lack of subject matter jurisdiction.