**In re CASAMONT INVESTORS, LTD., Debtor.**

**LINKWAY INVESTMENT COMPANY, INC., and William J.O. Holmes, Inc., Appellants,**

v.

**Melvin J. OLSEN and Dorothy B. Olsen, Appellees.**

**BAP Nos. EC–95–1741–MeRBa, EC–95–1766–MeRBa.**
**Bankruptcy No. 92–21132–A–11.**
**Adversary No. 93–2036.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued Feb. 22, 1996.

Submitted April 4, 1996.

Decided May 20, 1996.

H.L. Koelewyn, Sacramento, CA, for Linkway Investment Company, Inc.

William J.O. Holmes, San Mateo, CA, pro se.

William C. Hilson, Sacramento, CA, for Dorothy & Melvin Olsen.

## OPINION

Before: MEYERS, RUSSELL and BARR[1], Bankruptcy Judges.

MEYERS, Bankruptcy Judge:

## I

## OVERVIEW

On appeal is an order regarding the rights of two non-debtors in certain buildings formerly owned by the erstwhile debtor. While the bankruptcy case was pending Melvin J. and Dorothy B. Olsen ("Olsens") initiated an adversary proceeding seeking an order quieting title in the buildings. The underlying bankruptcy case was dismissed on May 4, 1993, however, the bankruptcy court agreed, at the behest of the Olsens, to retain jurisdiction over the adversary proceeding. On June 29, 1994, the bankruptcy court conducted a trial, and on June 30, 1995, issued the order which is the subject of the present appeal.

At oral argument on February 22, 1996, the Panel raised the issue of whether the

---

1. Hon. James N. Barr, Bankruptcy Judge for the Central District of California, sitting by designa-tion.

bankruptcy court had properly retained jurisdiction to determine the rights of the parties where the underlying case had been dismissed. Counsel requested an opportunity to brief the issue. Briefs were submitted and reviewed by the Panel. We hold that the bankruptcy court abused its discretion in agreeing to retain jurisdiction and consequently the order must be vacated.

## II

### FACTS

Prior to December 23, 1986, Casamont Investors, Ltd., ("Debtor") owned Cambridge House Apartments, a 140–unit apartment complex in Davis, California. In December of 1986 the Olsens purchased the underlying land from the Debtor. The deed specified the real property on which the complex sat ("Land"), but specifically excluded "all buildings and improvements situated thereon" ("Improvements"). The bankruptcy court found that the deed effectively severed the Improvements from the Land; the Olsens owning the Land and the Debtor owning the Improvements. At the same time the Debtor and the Olsens entered into a lease by which the Olsens, as lessors, leased the Land back to the Debtor ("Lease"). At this point the Debtor owned the Improvements and leased the Land from the Olsens. The Lease also provided that upon its termination the Improvements would be conveyed to the Olsens. On December 30, 1986, the deed and the Lease were recorded in Yolo County.

On May 9, 1990, a judgment in the amount of $91,139.78 was entered against the Debtor in favor of appellant, Linkway Investment Company, Inc. ("Linkway"). On June 7, 1990, Linkway recorded an abstract of judgment in Yolo County.

In a matter unrelated to the Linkway litigation, the Debtor, through a successor general partner, hired appellant William J.O. Holmes, Inc. ("Holmes"), to act as its attorney. To secure performance of Holmes' fees, the Debtor executed a deed of trust solely against the Improvements. The deed of trust was recorded in Yolo County on May 22, 1991.

On February 10, 1992, the Debtor filed a petition under Chapter 11. The Lease terminated on February 10, 1992 by operation of Bankruptcy Code Section 365(d)(4). On January 21, 1993, the Olsens filed a complaint in the bankruptcy court seeking an order quieting title in the Improvements and directing the Debtor and others to turn over certain security deposits pursuant to California Civil Code § 1950.5.

Less than two months after the complaint was filed, on March 12, 1993, the Debtor filed a motion to dismiss the bankruptcy case. The Debtor explained that reorganization was impossible; the case had dissolved into a dispute between the Olsens and the Debtor. The Debtor suggested "it is better to dismiss this bankruptcy case to leave the debtor and the Olsens free to resolve their disputes in state court, where this matter belongs." On March 29, 1993, the Olsens filed a conditional statement of non-opposition to the motion. The Olsens explained that they would acquiesce to dismissal so long as the order provided that the Lease was not revived and that the bankruptcy court retained jurisdiction over their quiet title action. The Olsens cited *In re Carraher*, 971 F.2d 327 (9th Cir. 1992) in support of their request that the court retain jurisdiction. The Olsens argued:

> The adversary proceeding can be promptly resolved in bankruptcy court without unfairness to any party. Comity with state courts is not significantly implicated because, in Olsens' view, the impact of federal law (11 U.S.C. § 365(d)(4)) on the ground lease is dispositive of the Complaint.

In a footnote the Olsens explained "[We] intend to file a motion for summary judgment once the Debtor's answer to the Complaint is filed. Debtor's answer is due on April 2, 1993." Nothing in the record indicates that any party opposed retention of jurisdiction. Holmes and Linkway answered the complaint on March 8, and April 26, 1993, respectively.

On May 4, 1993, the bankruptcy court, Judge Loren S. Dahl, entered an order dismissing the bankruptcy case, but retaining jurisdiction over the adversary proceeding. The order also provided that "Dismissal shall

not reinstate or revive Olsens' Ground Lease to the Debtor that was terminated during the bankruptcy case pursuant to 11 U.S.C. section 365(b)(4)."

On January 25, 1994, the bankruptcy court entered an order quieting title against all defendants, except Linkway and Holmes.

On June 29, 1994, the bankruptcy court conducted a trial with respect to the liens asserted by Linkway and Holmes (collectively "Appellants"). After the trial the Olsens and Linkway filed closing briefs. Neither raised the issue of jurisdiction. On June 30, 1995, the bankruptcy court, Chief Judge David E. Russell presiding, issued an order in favor of the Olsens, specifically determining that: (1) the Lease had, upon its execution by the Debtor, created in the Olsens a future interest in the Improvements; (2) the Olsens' future interest became possessory when the Lease terminated; and (3) by virtue of the Olsens' future interest becoming possessory, Appellants' liens against the Improvements were extinguished.

On February 22, 1996, the Panel heard argument on appeal from the order. At the hearing the Panel raised the issue of whether the bankruptcy court had properly retained jurisdiction where the underlying case had been dismissed. Counsel requested an opportunity to brief the issue. Briefs were submitted and have been reviewed.

## III

## JURISDICTION AND STANDARD OF REVIEW

█ We review the trial court's decision to retain jurisdiction for abuse of discretion. *In re Carraher,* 971 F.2d 327, 328 (9th Cir.1992).

## IV

## DISCUSSION

█ The jurisdiction of the bankruptcy courts, like that of other federal courts, is grounded in and limited by statute. *Celotex Corp. v. Edwards,* —— U.S. ——, ——, 115 S.Ct. 1493, 1498, 131 L.Ed.2d 403 (1995). This jurisdiction is not to be expanded by judicial decree. *Kokkonen v. Guardian Life Insurance Company of America,* —— U.S.

——, ——, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1994). As a general rule a bankruptcy court does not have jurisdiction in controversies between third parties not involving the debtor or property of the estate. *Baker & Taylor Drilling Co. v. Stafford,* 369 F.2d 551, 556 (9th Cir.1966). *See also Evarts v. Eloy Gin Corp.,* 204 F.2d 712, 717 (9th Cir.1953). If, however, such controversies are "related to" the underlying bankruptcy case, the court has jurisdiction pursuant to 28 U.S.C. § 1334(b).

## A. Related to Jurisdiction.

█ An action is "related to" a bankruptcy case if the outcome of the proceeding could conceivably alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) in such a way as to impact on the administration of the bankruptcy estate. *In re Fietz,* 852 F.2d 455, 457 (9th Cir.1988) (adopting the position of the Third Circuit as explained in *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984)). Jurisdiction is determined as of the commencement of the action. *Fietz, supra,* 852 F.2d at 457 at fn. 2.

At the time the Olsens filed their complaint the bankruptcy case was open and no plan had been confirmed. The Olsens sought, among other state law relief, a declaration that the liens asserted by the Appellants were invalid. Under the terms of the Lease the Debtor had an obligation to deliver the Improvements to the Olsens free and clear of liens. A finding that the Improvements were delivered subject to those liens could certainly have resulted in a liability of the estate in favor of the Olsens. Thus the outcome of the litigation could conceivably have impacted the estate and under the *Pacor/Fietz* test the proceeding was related to the bankruptcy case. Here though, the issue is not whether the bankruptcy case properly invoked jurisdiction over the adversary proceeding; it is clear that it did. The issue is whether the bankruptcy court properly retained such jurisdiction when the bankruptcy case was dismissed.

## B. Retention of Jurisdiction.

█ Beyond the bankruptcy context, if federal court jurisdiction is based on a feder-

al law claim which is eliminated prior to adjudication of pendent state law claims, the federal court can, under certain circumstances, retain its supplemental jurisdiction. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). In *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S.Ct. 614, 619, 98 L.Ed.2d 720 (1988), the Supreme Court summarized its holding in *Gibbs*:

> Under *Gibbs*, a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims. When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.

Generally where all federal law claims are eliminated before trial, the factors will favor declining to exercise jurisdiction over the remaining state law claims. 484 U.S. at 350, 108 S.Ct. at 619. Recognizing this authority to retain jurisdiction, the Ninth Circuit stated:

> But at the same time, we recognize that the existence of power to adjudicate a controversy is not always co-extensive with the propriety of its exercise. Where the federal head of jurisdiction has vanished from the case, and there has been no substantial commitment of judicial resources to the nonfederal claims it is, as Judge

Merrill of this court has written, akin to 'making the tail wag the dog' for the District Court to retain jurisdiction. These considerations give rise to a discretion in the District Court to dismiss the complaint and remand the case to the State Court.

*Murphy v. Kodz*, 351 F.2d 163, 167–68 (9th Cir.1965) (citations omitted).

A similar situation is faced by the bankruptcy court when the underlying bankruptcy case is dismissed. In determining whether the bankruptcy court abused its discretion by retaining jurisdiction over related proceedings, the Ninth Circuit and several other circuits have analogized to cases concerning the propriety of district courts retaining jurisdiction over pendent state law claims after federal claims have been dismissed.[2] The Seventh Circuit stated that the relationship between an adversary proceeding based solely upon state law and the underlying bankruptcy case from which it arises "is functionally identical to that between a supplemental proceeding and the federal claim to which it is supplementary." *Chapman v. Currie Motors, Inc., supra*, 65 F.3d at 81.

▮ The dismissal of a bankruptcy case has several ramifications as set out in Bankruptcy Code Section 349. The Ninth Circuit has explained, "Section 349 of the Bankruptcy Code lists the various effects of dismissal of the underlying bankruptcy case; conspicuously absent from that list is automatic termination of jurisdiction of related cases." *Carraher, supra*, 971 F.2d at 328. The bankruptcy court may retain jurisdiction over a related proceeding subject to considerations of judicial economy, fairness, convenience and comity. *Id.*[3]

---

2. *In re Porges*, 44 F.3d 159, 162–63 (2nd Cir. 1995); *In re Smith*, 866 F.2d 576, 580 (3rd Cir.1989); *Matter of Querner*, 7 F.3d 1199, 1201–02 (5th Cir.1993); *Chapman v. Currie Motors, Inc.*, 65 F.3d 78, 81 (7th Cir.1995); *In re Carraher*, 971 F.2d at 328; *In re Morris*, 950 F.2d 1531, 1534 (11th Cir.1992).

3. The Second, Third, Fifth, and Eleventh Circuits each began the analysis with the general rule, that related proceedings ordinarily should be dismissed following dismissal of the underlying bankruptcy. *Porges, supra*, 44 F.3d at 162; *Smith, supra*, 866 F.2d at 580; *Querner, supra*, 7 F.3d at 1201–02; *Morris, supra*, 950 F.2d at

1534. This rule favors dismissal because jurisdiction over the related proceeding matter was premised on the nexus between the proceeding and the underlying bankruptcy case. *Porges, supra*, 44 F.3d at 162. In those Circuits the considerations; judicial economy, fairness, convenience and comity, must presumably weigh in favor of retention else jurisdiction should not be retained.

The Ninth Circuit in *Carraher* recognized the "general rule" but did not specifically adopt it:
> Indeed some courts had referred to the "general rule" that jurisdiction is lost when the underlying bankruptcy case is dismissed. *See, e.g., In re Smith*, 866 F.2d 576, 580 (3rd Cir. 1989).

In *Carraher,* the debtors' state court fraud action was removed to the bankruptcy court. 971 F.2d at 328. The court dismissed the bankruptcy case but retained jurisdiction over the fraud action. *Id.* at 327. Having determined that res judicata clearly barred the debtors' claims, the court of appeals noted that it was neither less efficient nor less convenient for the bankruptcy court to resolve the issue. *Id.* at 328. Fairness also weighed in favor of retention since the related proceeding had been pending in the bankruptcy court for six years. *Id.* Finally, comity did not require remand as the decision given preclusive effect was that of another bankruptcy court. *Id.* The court concluded that the bankruptcy court had not abused its discretion in retaining jurisdiction. *Id.* The court cited with approval *Smith* and *Morris* in which the Third and Eleventh Circuits applied the same standards and also concluded that the courts had not abused their discretion.

In both *Smith* and *Morris,* the courts noted that judicial economy supported retention because the related matters in each had been pending for over four years: A remand at that point would not have served any purpose and would have been unnecessarily wasteful. *Smith, supra,* 866 F.2d at 580; *Morris, supra,* 950 F.2d at 1535. The court in *Morris* also noted that the legal issues were not so difficult as to require their being tried in state court. *Id.*

▮▮ Discretion to retain jurisdiction is sometimes necessary to avoid abuse of the bankruptcy court's authority to hear related claims. In *Chapman* the Seventh Circuit suggested that if the court did not have such discretion, "a litigant who didn't like the way his case was going could, even on the eve of judgment, engineer its dismissal, allowing him to start over in a different court." 65 F.3d at 81. This very situation was faced by the court in *Porges.* In *Porges,* a trial was held in a proceeding which was related to a Chapter 13 case. 44 F.3d at 161. The court orally ruled against the debtor and directed

counsel for the creditor to submit an order. *Id.* Before the order was submitted the debtor moved to dismiss the case. *Id.* The court dismissed the case but retained jurisdiction to enter the order in the adversary proceeding. *Id.* The Second Circuit upheld the retention of jurisdiction finding that to remand at that stage would waste judicial resources and would be unfair to the creditor. *Id.* at 163.

In contrast to *Carraher, Morris, Smith* and *Porges,* retention of jurisdiction was found to have been *improper* when the initiation of the dispute was recent, no action had been taken prior to the dismissal and the dispute concerned issues of probate law, in which the state courts had more expertise. In *Querner* a Chapter 13 debtor died before completion of his plan. 7 F.3d at 1200. Nevertheless, the bankruptcy court proceeded with the administration of the estate under the plan. *Id.* The court later closed the case, but retained jurisdiction over certain probate matters. *Id.* The Fifth Circuit held that the court abused its discretion: Judicial economy did not favor retention as the court had no special knowledge regarding the disputes and had committed few judicial resources prior to the close of the bankruptcy case; any inconvenience to the parties as a result of remand would have been slight; there was no evidence that remand would result in delay; and finally, as to comity, division of the decedent's estate should have been left to the state court. *Id.* at 1202.

The Ninth Circuit has provided clear factors to be considered when determining whether to retain jurisdiction. The Panel has reviewed several examples of their application within and beyond this Circuit. Applying these factors to the present case the Panel has determined that the bankruptcy court abused its discretion when it agreed to retain jurisdiction over the Olsens' adversary proceeding.

---

*Carraher, supra,* 971 F.2d at 328. The Ninth Circuit gave no indication of a presumption either way, but, citing *Harrell v. 20th Century Ins. Co.,* 934 F.2d 203, 205–06 (9th Cir.1991), stated that the court's weighing of the factors is discre-

tionary. 971 F.2d at 328. In the case at hand we need not attempt to discern a preference. As discussed below the Panel finds that the factors clearly weighed against the retention of jurisdiction.

### 1. Judicial Economy.

▮ In *Carraher, Smith* and *Morris* the related proceedings had been pending, as of the date the underlying cases were dismissed, for over four years. The courts and the parties had substantially litigated the actions. In each the appellate court recognized that remand to the state court would unnecessarily waste the efforts of the bankruptcy court and the parties. *Carraher, supra,* 971 F.2d at 328; *Smith, supra,* 866 F.2d at 580; *Morris, supra,* 950 F.2d at 1535. In *Querner,* on the other hand, the court had "expended few judicial resources" on the matter. *Supra,* 7 F.3d at 1202.

In this case the adversary proceeding had been pending for less than two months when the Debtor moved to dismiss the bankruptcy case. As of the date of the hearing on the motion to dismiss, when the Olsens asked the court to retain jurisdiction, the court had played no role in the adversary proceeding. Neither the Debtor nor Linkway had answered the complaint and Holmes had answered less than four weeks prior. As in *Querner,* the court expended judicial resources only *after* it agreed to retain jurisdiction. Furthermore, the legal issues involved, future interests in real property, are issues with which the state court can be presumed to be more familiar. The bankruptcy court should have considered that the matter could likely have been resolved more expeditiously not only in the state trial court but also in the state appellate courts. Judicial economy did not dictate that jurisdiction be retained.

### 2. Convenience.

▮ As in *Querner,* any inconvenience to the parties of dismissal would have been slight. The Olsens had merely filed their complaint. The minor inconvenience of refiling the complaint in the state court did not warrant retention of jurisdiction. As to the Debtor and Linkway there would have been no inconvenience—they had not even filed answers. Holmes could simply refile his answer in state court.

### 3. Fairness.

▮ In *Carraher,* the court noted that, given the advanced state of litigation, it would be unfair to compel the parties to start over again in state court. 971 F.2d at 328. The same concerns were expressed in *Smith,* 866 F.2d at 580 and *Morris,* 950 F.2d at 1535. In *Querner,* on the other hand, fairness was not an issue since there was no evidence that remand would have resulted in undue delay. 7 F.3d at 1202. So too in this case there is no evidence that the parties would be prejudiced by dismissal. As discussed above the Olsens would only to have refiled their complaint. Considerations of fairness did not favor retention of jurisdiction.

### 4. Comity.

▮ Needless decisions of state law by federal courts should be avoided as a matter of comity and in order to procure for the litigants "a surer-footed reading of applicable law." *United Mine Workers v. Gibbs, supra,* 383 U.S. at 726, 86 S.Ct. at 1139. Comity requires a bankruptcy court to consider whether the state laws involved are complex such that they ought to be construed and applied by state trial courts and reviewed by state appellate courts. Herein, more than any other factor, lies the ground for our decision. In the Olsens' statement of non-opposition to dismissal of the bankruptcy case they suggested: "Comity with state courts is not significantly implicated because, in Olsens' view, the impact of federal law (11 U.S.C. § 365(d)(4)) on the ground lease is dispositive of the Complaint." The Olsens' were mistaken.

The adversary proceeding did not involve, as the Olsens suggested, bankruptcy law issues. The impact of Code Section 365(d)(4) was established; the order dismissing the case provided: "Dismissal shall not reinstate or revive Olsens' Ground Lease to the Debtor that was terminated during the bankruptcy case pursuant to 11 U.S.C. section 365(b)(4)." The only remaining issues were the respective rights of the parties under the terms of the Lease and whether the Debtor and others would be required to turn over security deposits pursuant to California Civil Code Section 1950.5. These were clearly state law matters.

Not only were the issues based on state law, they were exceedingly complex. Judge Russell, who was not the judge who initially determined to retain jurisdiction, undertook a scholarly and comprehensive analysis of California real property law with an emphasis on the oft perplexing area of future interests. The bankruptcy court's decision cites twelve separate California statutes; twenty-one decisions of the California Courts of Appeals and the California Supreme Court and two treatises on California real property law. The cases interpreted by the bankruptcy court date back to the 1870's, with the majority of the cases having been decided prior to 1950. The most recent of the cases was decided nineteen years ago. The bankruptcy court's conclusion reveals the complexity of the issues: "[W]hether Casamont had a leasehold in the improvements or whether it had a limited fee, such as a fee simple subject to a condition subsequent, its interest extinguished upon termination of the lease."

■■■ By retaining jurisdiction the bankruptcy court also diverted the potential review of this complex area of real property law from the state to the federal appellate structure. Decisions of the federal courts on state law issues are not binding on California state courts. *People v. Crittenden*, 9 Cal.4th 83, 120 n. 3, 36 Cal.Rptr.2d 474, 885 P.2d 887 (1994); *Kalfountzos v. Hartford Fire Ins. Co.*, 37 Cal.App.4th 1655, 1660, 44 Cal. Rptr.2d 714 (1995). The state courts potentially lost an opportunity for binding precedent on these issues. While the Panel remains impressed with the extensive analysis undertaken by the trial judge, it is clear that the legal analysis required interpretation of difficult state law from which there was no distinct answer. No doubt the state court will appreciate the ground work laid by the trial court, however, if comity is anything it is the concept that, all else being equal, state law issues ought to be decided by state courts.

■■■ The Panel is aware that one of the parties asked the court to retain jurisdiction and the other party apparently did not object. At no time during the course of the proceeding did either party raise the issue. Nevertheless, a federal court has a continu-ing obligation to consider the appropriateness of retaining of jurisdiction throughout the course of the proceeding. *Carnegie–Mellon Univ. v. Cohill, supra*, 484 U.S. at 350, 108 S.Ct. at 619.

Finally, the Olsens' reliance on *In re Davis*, 177 B.R. 907 (9th Cir. BAP 1995), for the proposition that the bankruptcy court had jurisdiction over the adversary proceeding, is unnecessary. As discussed above this Panel agrees that the bankruptcy court had jurisdiction over the Olsens' adversary proceeding—jurisdiction is established at the time the action is initiated. The issue in this case is whether the court properly *retained* such jurisdiction after the underlying case was dismissed. This issue was not reached in *Davis*.

In *Davis* the bankruptcy court had, upon dismissal of the underlying bankruptcy case, dismissed an adversary proceeding as moot. The Panel reversed. The Panel then remanded with instructions that the bankruptcy court consider the factors set out in *Carraher*—"economy, convenience, fairness, and comity"—in determining whether to retain jurisdiction. *Davis*, 177 B.R. at 913.

In the present case the bankruptcy court already had occasion to consider these factors. The Olsens relied upon *Carraher* in their pleadings when they asked the court to retain jurisdiction. The *Davis* opinion is not inconsistent with our holding in this case.

## V

### CONCLUSION

■■■ To the extent a bankruptcy court has jurisdiction to hear a "related to" matter it is based upon its jurisdiction over the underlying bankruptcy case. When the bankruptcy case is dismissed proceedings related thereto are not automatically dismissed, however, the court should always consider that perhaps they should be. Discretion is given the bankruptcy court to retain jurisdiction when judicial economy, fairness, convenience and comity favor retention. In the present case these considerations favored dismissal. The bankruptcy court abused its discretion in retaining jurisdiction. This case

**526**

is remanded to the bankruptcy court with instructions that the order be vacated and the adversary proceeding be dismissed.