In re DIAGNOSTIC INTERNATIONAL, INC., Debtor.

Diagnostic International, Inc., Plaintiff,

v.

Aerobic Life Products Co., et al., Defendants.

Bankruptcy No. 97–12293–PHX–CGC. Adversary No. 99–511.

United States Bankruptcy Court, D. Arizona.

Oct. 26, 2000.

Christopher R. Kaup, Peskind Hymson & Goldstein, P.C., Scottsdale, AZ, for debtor.

Dewain D. Fox, Fennemore Craig, Phoenix, AZ, for defendants.

## UNDER ADVISEMENT DECISION RE: JURISDICTION OVER ADVERSARY PROCEEDING

CHARLES G. CASE, II, Bankruptcy Judge.

### I. Introduction and Facts

The issue before this Court is whether it has subject matter jurisdiction over this adversary proceeding. While on its face a seemingly straightforward question, there are several factors at play here, such as the timing of the adversary, the status of the underlying administrative case, and the type of claims alleged, that gives this matter an interesting wrinkle.

The facts are not in dispute. Diagnostic International, Inc. ("Reorganized Debtor") filed for Chapter 11 on September 9, 1997. The Court confirmed the Plan in May of 1999. Relevant to the issue here, the Plan identified potential postconfirmation litigation against Defendants in Article IV of the Plan:

However, the Debtor does anticipate possible postconfirmation litigation as to

a former insider named Anita Goodloe and her associate Joe Niederquel, alleged creditors of the Debtor, as to their apparent use of the Debtor's trade secrets and trademark infringement either before the Bankruptcy Court or in State Court.

In addition, the Plan also provided for the Court's continuing jurisdiction in Article XVIII:

> Following confirmation of this Plan, the Bankruptcy Court shall retain, without limitation, jurisdiction for the following purposes and to provide any relief the Reorganized Debtor may require to effectuate the Modified Plan or any modification of the Modified Plan:
>
> \* \* \* \* \* \*
>
> 2. Resolving all disputes regarding title to assets of the Reorganized Debtor and all disputes arising under the Bankruptcy Code;
>
> 3. Hearing all matters and deciding all issues regarding the prosecution by the Reorganized Debtor of any Complaints or causes of action against Anita Goodloe, Joe Niederquell and any associates or companies of same for theft and use of trade secrets and infringement of trademarks belonging to the Debtor and the Reorganized Debtor.

Two months later, in July of 1999, the Reorganized Debtor filed this adversary proceeding against Defendants Aerobic Life Products Company, Anita Goodloe, Hans Joseph and Jane Doe Niederquell ("Defendants"). The Complaint alleged three counts:

> Count I: Trademark Infringement of the Word Mark "Aerobic 07"
>
> Count II: Trade Secret Misappropriation: "Aerobic 07"
>
> Count III: Turnover of Property of the Estate

The Reorganized Debtor filed at the same time an Application for Temporary Restraining Order and Preliminary Injunction. At a hearing in July of 1999 on the request for injunctive relief, the Court granted Defendants time to file a motion for mandatory withdrawal of the reference with the Arizona District Court, which Defendants in fact filed within the month.

The District Court denied Defendants' motion to withdraw the reference on April 21, 2000. The court concluded that mandatory withdrawal pursuant to 28 U.S.C. section 157(d) did not apply because the issues raised in the adversary do not require consideration of substantial and material questions of federal law and no party requested a jury trial on a non-core matter. According to the district court, the issues raised by the complaint involve only state law questions as to ownership and misappropriation of the trademark and not federal questions as to the validity of the trademarks. The court further concluded that the Reorganized Debtor's last claim for turnover is a core bankruptcy proceeding also not subject to 28 U.S.C. section 157(d). The district court further found no grounds for permissive withdrawal under section 157(d), especially where the Bankruptcy Court was already familiar with the Reorganized Debtor's business, had "specifically reserved jurisdiction to resolve the continuing disputes between Plaintiff and Defendants," and where the turnover complaint arose entirely from bankruptcy law.

Upon receipt of the district court's decision, this Court issued an Order indicating that it believed, with the district court's denial of the motion to withdraw the reference and the Court's Order closing the case on March 31, 2000, that both the underlying administrative case and the adversary proceeding were completed and no further proceedings before this Court were necessary. In an abundance of caution, however, the Court granted the parties time to file position statements as to how this Court should proceed. The Reorganized Debtor argued that this adversary proceeding should proceed before this Court; Defendants disagreed. The Court then ordered the parties to file briefs as to

this Court's jurisdiction to proceed with this adversary.

## II. Analysis

 The Reorganized Debtor argues that this Court expressly reserved jurisdiction over this adversary proceeding when confirming the Plan and, therefore, there is no question the Court continues to have subject matter jurisdiction over these proceedings. This oversimplifies the law of Bankruptcy Court jurisdiction and ignores a fundamental jurisdictional principle that a court cannot "write its own jurisdictional ticket." *In re Poplar Run Five Limited Partnership*, 192 B.R. 848, 859 (Bankr. E.D.Va.1995) (quoting *Zerand–Bernal Group, Inc. v. Cox*, 23 F.3d 159, 164 (7th Cir.1994)). Neither this Court nor the Reorganized Debtor can therefore confer subject matter jurisdiction on this Court when the Court does not have jurisdiction in the first place. Id. "Consequently, a retained jurisdiction clause cannot grant subject-matter jurisdiction over a proceeding when the proceeding itself is already outside the jurisdictional boundaries defined by statute." *Id.* (citing *Walnut Assocs. v. Saidel,* 164 B.R. 487, 494–95 (E.D.Pa.1994); *Portfolio Lease Funding Corp., No. 1 v. Seagate Technology, Inc. (In re Atlantic Computer Sys., Inc.),* 163 B.R. 704, 707 (Bankr.S.D.N.Y.1994)). The question then is whether this Court had jurisdiction over this adversary at the time the action was filed.[1] *In re Casamont Investors, Ltd.*, 196 B.R. 517, 521 (9th Cir. BAP 1996) ("Jurisdiction is determined as of the commencement of the action.").

Jurisdiction in bankruptcy cases is codified at 28 U.S.C. section 1334 and provides, *inter alia*, that "district courts shall have original and exclusive jurisdiction of all cases under title 11." 28 U.S.C. § 1334(a). "Cases" refers merely to the bankruptcy petitions themselves: Jurisdiction over adversary proceedings is governed by section 1334(b). Section 1334(b) has three subcategories of subject matter jurisdiction: 1. "arising under" jurisdiction; 2. "arising in" jurisdiction; and 3. "related to" jurisdiction.[2] *In re Menk,* 241 B.R. 896, 904 (9th Cir. BAP 1999). District courts may in turn refer to the bankruptcy courts not only all cases under title 11, but also all proceedings "arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 157(a). "As non-Article III tribunals, bankruptcy courts may 'hear and determine,' and thus issue dispositive orders in, 'all core proceedings arising under title 11, or arising in a case under title 11.'" *Poplar,* 192 B.R. at 855 (citing 28 U.S.C. § 157(b)(1)). Unless the parties consent, a bankruptcy court cannot issue dispositive orders in a non-core proceeding that is otherwise related to a case under title 11. *Id.;* 28 U.S.C. § 157(c).

 Therefore, the question to be answered first is what type of adversary proceeding is this—one that arises under, arises in, or is related to the chapter 11 bankruptcy? The Reorganized Debtor argues that this adversary is an action "arising under" title 11. This Court disagrees. A case "arising under title 11" means essentially the cause of action is created by title 11 or that the right to relief necessarily depends on resolution of a substantial question of bankruptcy law. *Eastport Assocs. v. City of Los Angeles (In re Eastport Assocs.),* 935 F.2d 1071, 1076 (9th Cir.1991); *In re Poplar,* 192 B.R. at 855 (citing *Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 27–28, 103 S.Ct. 2841, 2856, 77 L.Ed.2d 420 (1983)). The only claim in the adversary

---

1. The question is not whether the Court had jurisdiction at the time it confirmed the Plan, as the adversary had not yet been filed and, therefore, there was no proceeding over which the Court could exercise jurisdiction.

2. "Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b).

that "arises under" title 11 is the Reorganized Debtor's count for turnover pursuant to 11 U.S.C. section 542(a). The turnover count no longer existed, however, once this Court confirmed the Reorganized Debtor's Plan. The analysis in *Poplar* is on point. A complaint for turnover cannot exist once the bankruptcy court confirms the debtor's plan because the estate ceases to exist upon plan confirmation. 192 B.R. at 856. All estate property not otherwise transferred under the plan reverts back to the debtor. The claim for turnover expressly states that it applies "during the case"— the bankruptcy case—and requires return of the property to the trustee. 11 U.S.C. § 541(a). Once the plan is confirmed, there is no trustee or estate left to which the property may be returned. Therefore, while the Reorganized Debtor stated a claim for turnover, the true nature of the claims in the complaint are state law claims and not claims arising under title 11.

■ The claims in the Reorganized Debtor's adversary are also not proceedings "arising in a case under title 11." Such proceedings are primarily those administrative proceedings that, while not based on any right created by title 11, nevertheless have no existence outside of bankruptcy. *Eastport Assocs.*, 935 F.2d at 1076. The Reorganized Debtor's claims for trademark infringement and trademark misappropriation are again simple state law claims and do not rely on the existence of a bankruptcy for their existence. They are not claims that "have no practical existence but for the bankruptcy." *See Poplar*, 192 B.R. at 857.

■ The most the Reorganized Debtor could hope for, therefore, is "related to" jurisdiction. "Related to" jurisdiction lies with the bankruptcy court if the outcome of the proceedings could conceivably have any effect on the estate being administered in bankruptcy. *Celotex Corp. v. Edwards*,

514 U.S. 300, 308–09 n. 6, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995); *see also In re Menk*, 241 B.R. at 908. The Reorganized Debtor's Plan has been confirmed, however, and as such the estate ceases to exist. *See Casamont Investors*, 196 B.R. at 521; *In re Poplar*, 192 B.R. at 858. Further, the Court closed the Reorganized Debtor's case on March 31, 2000, upon the Reorganized Debtor's representation that the administrative case had been fully administered. As the *Poplar* court concluded, "[u]nder these circumstances, we conclude that any recovery obtained by [Debtor] in this proceeding would neither enlarge the estate nor benefit the unsecured creditors, inasmuch as this bankruptcy has already been wound up." *Id.* The bankruptcy court's jurisdiction can be seen as slowly diminishing as the proceeding before the court has less and less to do with bankruptcy and as the bankruptcy itself slowly resolves. It is generally accepted that bankruptcy courts retain some measure of jurisdiction after confirmation, though somewhat diminished, to enforce the court's own orders, modify the plan, and ensure enforcement of the plan. *See* 11 U.S.C. § 1142; *see also Goodman v. Phillip R. Curtis Enter., Inc. (In re Goodman)*, 809 F.2d 228, 232 (4th Cir.1987); *In re Poplar*, 192 B.R. at 859. Jurisdiction further erodes upon entry of the final decree. *Walnut Assocs. v. Saidel*, 164 B.R. 487, 492 (E.D.Pa.1994).

■ Even if the Reorganized Debtor's adversary proceeding were "related to" title 11 such that the Court could exercise jurisdiction over the adversary during the bankruptcy, the question is really whether the Court could properly retain jurisdiction over the adversary once the Plan was confirmed and the case closed. The Ninth Circuit Bankruptcy Appellate Panel ("BAP") in *In re Casamont* addressed this issue, albeit in the context of a dismissed Chapter 7 case.[3] 196 B.R. 517 (9th Cir.

---

**3.** The Court finds the fact that *Casamont* involved a bankruptcy case that was dismissed

as opposed to a bankruptcy case substantially consummated and/or fully administered as

BAP 1996). The BAP analogized to cases discussing the propriety of district courts retaining jurisdiction over pendent state law claims after dismissal of the federal claims and concluded that the situation is similar where the bankruptcy court seeks to retain jurisdiction over pendent state court claims after dismissal of the bankruptcy case. 196 B.R. at 522. The BAP concluded that the bankruptcy court may only retain jurisdiction over the related to proceeding subject to "considerations of judicial economy, fairness, convenience and comity." Id.; See also In re Menk, 241 B.R. at 907 ("Once the administration of the bankruptcy case has ended, the relation to the case becomes so attenuated that § 1334(b) 'related to' jurisdiction presumptively expires unless the court specifically retains jurisdiction. To that end, it is agreed that the bankruptcy court has discretion to retain jurisdiction over matters within its § 1334(b) 'related to' jurisdiction after dismissal, subject to the same considerations—economy, convenience, fairness, and comity—that the district courts apply when deciding whether to retain a supplemental state claim after federal claims have been dismissed.").

Upon weighing these factors, the Court concludes that it does not have subject matter jurisdiction over this adversary proceeding. Other than considering (but never ruling on) whether a temporary restraining order should issue, no other substantive proceedings have been held before this Court. The delay has been occasioned by the withdrawal of the reference proceedings before the district court. Few resources of this Court or the parties have been spent toward a resolution of this action. There is little argument that state court would be as convenient as this Court and, in fact, the Reorganized Debtor's Plan

clearly acknowledged that this case may be brought in state court. The issues, moreover, are purely state law issues. The Reorganized Debtor argues, however, that it will be prejudiced in having to proceed in state court over a year after filing the adversary because it will not be able to recover damages for at least one year of Defendants' alleged wrongful acts. This loss, however, does not amount to substantial prejudice, especially in light of the fact that if this Court exercises jurisdiction and proceeds to judgment in favor of the Reorganized Debtor but is then subsequently reversed on appeal, the Reorganized Debtor could potentially lose out on even more damages in having to start all over again with a new suit in state court. Continuing jurisdiction where jurisdiction is highly questionable is dangerous for all.

In addition, in exercising jurisdiction over a non-core, related to proceeding, this Court cannot issue a dispositive ruling. The Court may only make proposed findings of fact and conclusions of law that must then be referred to the district court for consideration. 28 U.S.C. § 157(c). This will add only more delay to resolving the underlying issues.

## III. Conclusion

For these reasons, the Court concludes that it lacks subject matter jurisdiction over this adversary proceeding commenced after confirmation of the Reorganized Debtor's Plan. The underlying bankruptcy, moreover, was closed earlier this year upon the Reorganized Debtor's representation that the Plan was fully administered. Therefore, this adversary is dismissed. The Reorganized Debtor may proceed with this lawsuit if it so desires in state court. Defendants are to lodge a

the one before this Court to be of little importance. What is important is that the administrative case itself is no longer before this Court and no longer the basis upon which this Court has jurisdiction over the adversary proceeding. In fact, the Casamont court cited for support a Fifth Circuit case in which the

court concluded that the bankruptcy court had improperly retained jurisdiction over an adversary proceeding involving state probate issues after the estate was fully administered under the plan and the case closed. In re Casamont, 196 B.R. at 523 (citing Matter of Querner, 7 F.3d 1199, 1200 (5th Cir.1993)).

form of order consistent with this Court's decision for signature.

So ordered.