

**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP Nos. OR-17-1326-SLB |
| | OR-17-1327-SLB |
| DENNIS RAYBOULD, | (Related Appeals) |
| Debtor. | |
| DENNIS RAYBOULD, | BAP No. OR-17-1326-SLB |
| Appellant, | Bk. No. 6:17-bk-61464-tmr |
| v. | **MEMORANDUM**[*] |
| NALIKO MARKEL, Chapter 13 Trustee, | |
| Appellee. | |

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value. *See* 9th Cir. BAP Rule 8024-1.

| | |
|---|---|
| DENNIS RAYBOULD, | BAP No. OR-17-1327-SLB |
| Appellant, | Bk. No. 6:17-bk-61464-tmr |
| v. | Adv. No. 6:17-ap-06057-tmr |
| JPMORGAN CHASE BANK N.A.; CHASE BANK USA, N.A.; CHASE HOME FINANCE LLC; JPMORGAN CHASE & CO.; J.P. MORGAN MORTGAGE ACQUISITION CORPORATION; ERIKA LANCE; NATIONWIDE TITLE CLEARING, INC., | |
| Appellees. | |

Submitted Without Oral Argument
on January 24, 2019

Filed – March 26, 2019

Appeal from the United States Bankruptcy Court
for the District of Oregon

Honorable Thomas M. Renn, Bankruptcy Judge, Presiding

_____

Appearances:  Appellant Dennis Raybould, pro se, on brief; Kevin H. Kono and Frederick B. Burnside of Davis Wright Tremaine LLP on brief for Appellees Chase Bank USA, N.A., Chase Home Finance LLC, J.P. Morgan Mortgage Acquisition Corporation, JPMorgan Chase & Co., and

JPMorgan Chase Bank, N.A.; Mark B. Comstock of
Garrett Hemann Robertson P.C. on brief for appellees
Nationwide Title Clearing, Inc., and Erika Lance.

————

Before: SPRAKER, LAFFERTY and BRAND, Bankruptcy Judges.

## INTRODUCTION

Dennis Raybould has been striving for years to save his residence from foreclosure. As part of his efforts, he defended against a state court foreclosure action brought by JPMorgan Chase Bank, N.A. ("Chase"). He also filed counterclaims and third party claims in that action against Chase, its affiliates and agents. After several adverse rulings in the state court, Raybould took his fight to the bankruptcy court. He filed a voluntary chapter 13[1] petition and commenced an adversary proceeding that mirrored his state court counterclaims and third party claims.

Raybould failed to obtain credit counseling before filing his petition. After filing his petition and plan, he failed to timely make all of his plan payments. He also failed to file required tax returns with the Oregon Department of Revenue. Based on these failures, the bankruptcy court dismissed his bankruptcy case. Having decided to dismiss the bankruptcy

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

case, the bankruptcy court also decided to relinquish jurisdiction over the adversary proceeding and dismissed it. Essentially, the bankruptcy court was convinced that all of Raybould's claims could be more efficiently, fairly and conveniently disposed of in the state court action.

We agree with the bankruptcy court's reasoning. Furthermore, the dismissals were amply supported by the undisputed facts in the record. Accordingly, we AFFIRM.

## FACTS

### A. Raybould's Residence And The Foreclosure Proceedings Against It.

Raybould has lived in his residence on Bay Berry Lane since 1993. In February 2006, Raybould refinanced the property. Raybould executed a note and deed of trust, which secured the underlying debt in the amount of $237,600. The deed of trust was recorded in Lane County's office of deeds and records.

In 2010, Raybould defaulted on his loan payments. He has not made payments to bring the loan current since that time. In June 2015, Chase commenced a lawsuit in the Lane County Circuit Court seeking judicial foreclosure. In response, Raybould answered and asserted counterclaims and third party claims against Chase and others for quiet title, unlawful collection practices, violation of the Truth In Lending Act (15 U.S.C. § 1601, et seq.), civil conspiracy, defamation, fraud on the court, declaratory judgment, cancellation of instrument, replevin, unlawful trade practices,

4

and breach of fiduciary duty. Ultimately the state court entered an order granting summary judgment in favor of Chase and against Raybould. According to Chase, at that point, all that remained to be done in the state court was entry of a final judgment based on the state court's prior rulings on the parties' claims and defenses.

**B. Raybould's Bankruptcy Case And His Adversary Proceeding.**

On May 8, 2017, the same day the state court entered its order granting summary judgment, Raybould commenced his bankruptcy case by filing a voluntary chapter 13 petition. Nearly two months later, on June 30, 2017, he filed a form chapter 13 plan. Most of the form plan was left blank. The only substantive information Raybould set forth in his plan concerned plan payments. He promised to pay to the trustee monthly plan payments of $200 for 36 months, with a balloon payment of $218,344.98 at the end of the plan term.

In July 2017, Raybould commenced an adversary proceeding against Chase, its affiliates, and agents. The subject matter of the adversary proceeding was substantially the same as that set forth in Raybould's state court counterclaims and third party claims. As in the state court action, Raybould sought to stave off Chase's foreclosure. He alleged that Chase had engaged in unfair and unlawful lending, debt collection and foreclosure practices. Most of the allegations and most of the claims for relief stated in the adversary proceeding complaint mirror the

counterclaims and third party claims stated in the state court action.[2]

After some preliminary skirmishing between the parties, on September 22, 2017, the bankruptcy court entered an order suspending prosecution of the adversary proceeding pending a status conference. According to the court's order, before prosecution resumed, the court needed to discuss with the parties "deadlines, possible abstention, and other related matters" concerning both the adversary proceeding and the main case.  The matters included a motion for relief from stay seeking authority to proceed to judgment in the state court action. The relief from stay motion also sought annulment of the stay to retroactively validate the state court's order granting summary judgment entered the same day Raybould commenced his bankruptcy case.[3]

---

[2] None of the parties have provided us with a complete record. To facilitate our appellate review, we can and do take judicial notice of the underlying bankruptcy case and adversary proceeding dockets and the documents appended thereto. *See Chagolla v. JP Morgan Chase Bank, N.A. (In re Chagolla)*, 544 B.R. 676, 681 n.5 (9th Cir. BAP 2016).

[3] The relief from stay motion identified the movant as U.S. Bank. U.S. Bank also filed a proof of claim. In the proof of claim, U.S. Bank claimed it was the successor in interest to "Chase" under the Raybould note and deed of trust. At the October 18, 2017 hearing, U.S. Bank's counsel represented to the court that the loan was "service transferred" to Rushmore Loan Management Services as servicer and U.S. Bank as the noteholder as of July 1, 2017. U.S. Bank's counsel also represented that his law firm now had physical possession of the note. In other words, according to U.S. Bank, shortly after Raybould commenced his bankruptcy case, U.S. Bank became the noteholder with the right to enforce the note and enforce the deed of trust securing the note. An attorney for the Chase defendants also was present at the October 18, 2017 hearing. He did not claim that any of the Chase entities still held the note or challenge the representation

(continued...)

While Raybould was attempting to prosecute his adversary proceeding, his bankruptcy case was foundering. On July 19, 2017, the chapter 13 trustee filed a motion seeking to dismiss the case for failure to complete the § 341(a) meeting of creditors. Raybould opposed the motion to dismiss. On August 15, 2017, the bankruptcy court held a hearing on the dismissal motion. Raybould did not order a transcript from this hearing, but on August 18, 2017, the court entered a minute order which generally reflects what transpired at the hearing.

During the hearing, the trustee raised concerns regarding Raybould's failure to submit any chapter 13 plan payments or file his state tax returns in addition to failing to attend the § 341(a) meeting. Raybould responded to the court that two plan payments of $200 each already were "on the way to the trustee" and another $200 plan payment would be sent that day. Raybould also apparently promised to file the missing tax returns. On the basis of Raybould's promises and representations, the bankruptcy court denied the trustee's motion to dismiss. The court said it would reset the dates of the continued § 341(a) meeting and the confirmation hearing and that it would issue a notice regarding the reset dates. The bankruptcy court also set a deadline of August 31, 2017, for Raybould to bring his plan payments current. The court ordered Raybould to "provide the trustee

[3](...continued)
that U.S. Bank was Chase's successor in interest as of July 1, 2017.

7

with any requested documents pertinent to his case" including his "2012 through 2016 tax returns."

On September 21, 2017, the trustee objected to Raybould's chapter 13 plan and again moved to dismiss the case. The trustee asserted that, at the August 15, 2017 hearing, Raybould had lied to the court about having already sent the trustee $400 in plan payments. Raybould had submitted to the trustee a $650 money order dated September 8, 2017, which the trustee did not receive until September 14, 2017. As the trustee put it, Raybould's misrepresentations to the court regarding plan payments, in conjunction with his failure to meet the court-imposed payment deadline of August 31, 2017, constituted cause for dismissal.

As for tax returns, the trustee noted that § 1308(a) required Raybould to file his tax returns for the four years immediately preceding his bankruptcy filing. The trustee also pointed out that the Oregon Department of Revenue had objected to Raybould's chapter 13 plan because he had failed to submit to the Department any tax returns for 2012 through 2016.[4] According to the trustee, at the continued § 341(a) meeting, Raybould had explained that he needed to go through boxes and find out what was there in the way of tax returns because his wife had taken care of their tax

[4] The Oregon Department of Revenue's plan objection was in the form of letter, which in relevant part demanded that Raybould file tax returns for the 2012 though 2016 tax years. The Department also filed a proof of claim for zero dollars, which it said it would amend once Raybould filed the required tax returns.

returns, and she had passed away roughly six months before his bankruptcy filing. The trustee asserted that, under § 1308(b), the case should be dismissed if the missing tax returns were not filed by the time of the continued plan confirmation hearing.

Furthermore, the trustee opined that the case appeared to be a two-party dispute with the bank over his residence and the looming state court foreclosure proceedings. The trustee posited that this dispute probably should be resolved in the state court where it had been ongoing and apparently had been at least partially adjudicated.

**C. The Final Hearing In The Case And The Adversary Proceeding**.

The court held the continued confirmation hearing on October 18, 2017. Additionally, several other matters were noticed for hearing at the same date and time, including a motion to dismiss certain defendants from the adversary proceeding , U.S. Bank's motion for relief from stay to permit the state court to enter final judgment in the foreclosure action, and a status conference in both the bankruptcy case and the adversary proceeding.[5]

---

[5] While the court's initial hearing notice of September 22, 2017, and its corrected hearing notice of September 25, 2017, did not mention that case dismissal and adversary proceeding dismissal would be at issue at the October 18, 2017 hearing, the chapter 13 trustee's plan objection and its second motion to dismiss were served on Raybould by mail on September 21, 2017. Additionally, Raybould was given generic notice at the time of the commencement of his bankruptcy case that his case might be dismissed without further prior notice if he failed to timely make his plan payments, or he failed to timely file any necessary documents. In any event, Raybould has not challenged the

(continued...)

At the hearing, the court found that Raybould had failed to bring current his plan payments and that he had failed to submit any of the missing tax returns. Furthermore, the court was concerned that Raybould was unable to articulate with any clarity or credibility why he was still tardy in completing these obligations and, more importantly, when he would cure the continuing deficiencies. The court also was particularly troubled by Raybould's written representation under oath that he had completed his credit counseling requirement prior to his bankruptcy filing. Raybould eventually filed a credit counseling certificate, but it stated that Raybould completed the credit counseling requirement several weeks after his bankruptcy filing. Based on these problems, the bankruptcy court dismissed the bankruptcy case.

As for the adversary proceeding, the bankruptcy court noted that, under certain circumstances, it had discretion to retain jurisdiction over an adversary proceeding even after dismissal of the underlying bankruptcy case. But the bankruptcy court concluded that Raybould's adversary proceeding essentially was a nonbankruptcy matter over which other courts already had been presiding for quite some time. Consequently, the bankruptcy court dismissed the adversary proceeding, albeit without prejudice to the ongoing state court action.

---

[5](...continued)
dismissal orders on appeal based on a claim of insufficient notice.

The bankruptcy court entered orders dismissing the bankruptcy case and the adversary proceeding on October 20, 2017. Raybould timely appealed.[6]

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (O). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

1. Did the bankruptcy court abuse its discretion when it dismissed Raybould's bankruptcy case?

2. Did the bankruptcy court abuse its discretion when it dismissed Raybould's adversary proceeding?

## STANDARDS OF REVIEW

We review the bankruptcy court's chapter 13 case dismissal for an

---

[6] Raybould later amended his notices of appeal from both the case dismissal order and the adversary proceeding dismissal order. By way of these amendments, Raybould apparently sought to include within his appeals review of a number of other non-dispositive orders, rulings, and other matters. In an order entered in September 2018, one of our motions panels ruled that, absent a legally sufficient response from Raybould, the scope of his appeal in BAP No. OR-17-1326 would be limited to the case dismissal order. *See* BAP No. OR-17-1326, Doc. No. 40. Raybould never responded to the motions panel's order. That order held that the additional matters Raybould sought to have reviewed either were not appealable orders or were untimely appealed. We agree with the motions panel's analysis and conclusion. Accordingly, the scope of our review in BAP No. OR-17-1326 is limited to the case dismissal order. As for BAP No. OR-17-1327, the other matters Raybould seeks to challenge in that appeal merged into the adversary proceeding dismissal order and are subsumed within our review of that order below.

abuse of discretion. *Ellsworth v. Lifescape Med. Assocs., P.C. (In re Ellsworth)*, 455 B.R. 904, 914 (9th Cir. BAP 2011). We also review for an abuse of discretion the bankruptcy court's decision to relinquish jurisdiction over the adversary proceeding and to dismiss it. *Carraher v. Morgan Elecs., Inc. (In re Carraher)*, 971 F.2d 327, 328 (9th Cir. 1992).

The bankruptcy court abused its discretion if it based its decision on an incorrect legal rule, or if its factual findings were illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *United States v. Hinkson*, 585 F.3d 1247, 1261–63 (9th Cir. 2009) (en banc).

## DISCUSSION

### A.    Dismissal of Bankruptcy Case.

In order to be eligible to commence a bankruptcy case, individual debtors ordinarily must complete statutorily-mandated credit counseling **before** they file their bankruptcy petition. § 109(h); *see also Gibson v. Dockery (In re Gibson)*, 2011 WL 7145612, at *3 (9th Cir. BAP Dec. 1, 2011). The only exceptions to this rule are those specified in the statute and are quite narrow in scope. *In re Gibson*, 2011 WL 7145612, at *3; *see also Duncan v. LaBarge (In re Duncan)*, 418 B.R. 278, 281 (8th Cir. BAP 2009) (describing exceptions). The bankruptcy court has no discretion to fashion its own exceptions or to otherwise excuse noncompliance with § 109(h)'s eligibility requirement, which clearly expresses Congress's intent to require

12

**prepetition** credit counseling in virtually all circumstances. *In re Gibson*, 2011 WL 7145612, at *3.

Here, Raybould filled out, signed and filed the official form bankruptcy petition that identifies the prepetition credit counseling requirement and specifies the consequence for noncompliance (dismissal). In such instances the bankruptcy court may sua sponte dismiss the bankruptcy case without further notice or hearing based upon the debtor's failure to satisfy the statutory requirement imposed by § 109(h) or to meet any of its exceptions. *Id.* at *1-3.

On appeal, Raybould all but ignores that the bankruptcy court dismissed his bankruptcy case in large part because of his failure to obtain prepetition credit counseling **and** because he falsely stated under oath that he had completed the requirement prepetition. Concerning credit counseling, all Raybould states in his appeal brief is that "[t]he credit counseling briefing had been obtained." But the evidence in the record reflects that Raybould's credit counseling was completed several weeks after he commenced his bankruptcy case. Raybould never has denied this, either in the bankruptcy court or on appeal. Nor did he ever attempt to invoke any of the narrow exceptions to the requirement. As set forth above, the bankruptcy court had no discretion to excuse Raybould's attempt to belatedly satisfy the credit counseling requirement. *Id.* at *1-3. Therefore, Raybould's failure to obtain prepetition credit counseling was a sufficient

ground, by itself, to dismiss his bankruptcy case and mandates our affirmance.

In light of Raybould's ineligibility under § 109(h) it is not necessary to reach the other issues addressed in his appeal brief. However, none of these additional issues support reversal of the bankruptcy court's case dismissal order. Raybould mainly argues that the bankruptcy court erred in dismissing his case for his failure to file tax returns with the Oregon Department of Revenue for the tax years 2013 though 2016.[7] Section 1308(a) required Raybould to file these tax returns "with the appropriate taxing authorities" to the extent nonbankruptcy law required the filing of the returns. Under § 1307(e), a failure to timely comply with this requirement mandates dismissal or conversion, whichever is in the best interest of the creditors and the estate.[8]

On appeal, Raybould argues that he had no obligation to file returns

---

[7] Raybould failed to file tax returns for five years -- 2012 through 2016. The Bankruptcy Code requires the debtor to file tax returns for the four years immediately preceding the petition. § 1308(a). The Code further provides for dismissal or conversion if the debtor fails to file any of the tax returns required by § 1308(a). § 1307(e). Therefore, the bankruptcy court's dismissal under § 1307(e) was based on Raybould's failure to file the 2013 through 2016 tax returns, even though the 2012 tax return also was delinquent.

[8] Neither the trustee, nor Raybould, argued for conversion as an alternative to dismissal. Consequently, the bankruptcy court did not commit reversible error by not considering conversion in lieu of dismissal. *See Seymour v. Greer (In re Seymour)*, 2017 WL 5196703, at *5 n.5 (9th Cir. BAP Nov. 9, 2017) (citing *Velasquez v. Burchard (In re Velasquez)*, 2016 WL 4259952, at *2 n.5 (9th Cir. BAP Aug. 9, 2016)).

with the Oregon Department of Revenue because he did not have any income to report for those taxable years.[9] We disagree. The Oregon Department of Revenue demanded that Raybould file returns for the tax years 2012 through 2016. As a result, Raybould was required to file the Oregon returns. *See* ORS § 314.370; *Dep't of Revenue v. Welch*, 651 P.2d 721, 723 (Or. 1982) ("[w]here the department determines that a person or entity may have earned income taxable under ORS Chapter 316, it may require that person or entity to file an Oregon income tax return.").  Moreover, the Oregon Department of Revenue "need not, as a precondition to requesting or compelling the filing of a return, prove that the person or entity did in fact receive taxable income and the amount of any tax liability." *Id*. Since Raybould was required by nonbankruptcy law to file the returns, the bankruptcy court correctly applied both § 1308(a) and § 1307(e).[10]

---

[9] In the bankruptcy court, Raybould equivocated regarding whether these tax returns had been filed. In a claim objection he filed in response to the proof of claim filed by the Oregon Department of Revenue, he conceded that the subject tax returns had not been filed and instead argued that there was no proof that he was obliged to file the subject tax returns. He adopts and seeks to amplify this position on appeal. However, at the time of the October 18, 2017 hearing, Raybould did nothing to factually or legally develop this argument. In fact, at the final hearing, when the court asked Raybould about this argument, he simply admitted that he did not know whether the subject tax returns had been filed.

[10] Additionally, Raybould acknowledges in his appeal brief that he regularly received $1,200 per month in income. In his bankruptcy schedules and statements, he listed this as business income. He also has not disputed that his receipt of this income stream predates his bankruptcy filing. He merely argues that this income is neither

(continued...)

15

In short, there was considerable evidence to support the bankruptcy court's determination that Raybould needed to file the missing tax returns with the Oregon Department of Revenue and that he did not after having been given the opportunity to do so. Accordingly, the bankruptcy court did not abuse its discretion to the extent it dismissed the case based on Raybould's failure to file state tax returns for 2013 through 2016.

Finally, Raybould failed to make his initial plan payments. At the August 15, 2017 hearing on the chapter 13 trustee's first motion to dismiss, the bankruptcy court required Raybould to bring his plan payments current by August 31, 2017. He failed to do so, prompting the chapter 13 trustee to move to dismiss the case for failure to make the plan payments. At the October 18, 2017 final hearing, Raybould admitted that he never had fully cured his plan payment delinquencies. He again insisted that he would do so right after the hearing, but he said much the same thing at the

---

[10](...continued)
taxable nor reportable, so he was not obliged to file any state tax returns. Again, we disagree. Business income qualifies as gross income for income tax purposes under both federal law and Oregon law. *See* 26 U.S.C. § 61(a)(2); *see also Combs v. Dep't of Revenue*, 14 P.3d 584, 585 (Or. 2000) ("When considering whether funds received by a taxpayer constitute state taxable income, this court applies pertinent administrative and judicial interpretation of the federal income tax law."). When an individual's gross income exceeds a certain minimum base amount per year, the Oregon Department of Revenue typically requires filing of a tax return. *See, e.g., Do I Need To File?*, Or. Dep't of Revenue, https://www.oregon.gov/dor/programs/individuals/pages/file-requirements.aspx (last visited March 12, 2019). Raybould's self-reported income stream of $1,200 per month significantly exceeds current base amounts. *Id.*

August 15, 2017 hearing. Moreover, he was unable to identify any legitimate reason why he had failed to do so. In spite of Raybould's assurances the bankruptcy court no longer believed that Raybould was willing or able to timely make his plan payments. The court's finding amply was supported by Raybould's inability to articulate his intentions and expectations regarding the completion of his plan, amended or otherwise.

A debtor's failure to timely make his or her chapter 13 plan payments is cause for dismissal of the case. § 1307(c)(4); *In re Seymour*, 2017 WL 5196703, at *5. Raybould only contested on appeal the bankruptcy court's determination that he was unable or unwilling to timely make his plan payments. The fact remains that he failed to timely make his plan payments, and similarly failed to cure the deficiency by the date the court originally ordered, or even by the later hearing. On this record, the bankruptcy court's finding regarding Raybould's plan payments was logical, plausible, and supported by the record.

In sum, the bankruptcy court did not abuse its discretion when it dismissed Raybould's bankruptcy case.

**B.    Dismissal of Adversary Proceeding.**

Both the Ninth Circuit Court of Appeals and this Panel previously have addressed the issue of what happens to an adversary proceeding when the underlying bankruptcy case is dismissed. In such matters, the

17

bankruptcy court does not automatically lose jurisdiction over "related to" claims for relief set forth in the adversary proceeding. *In re Carraher*, 971 F.2d at 328; *Linkway Inv. Co. v. Olsen (In re Casamont Investors, Ltd.)*, 196 B.R. 517, 522 (9th Cir. BAP 1996).[11]

Instead, a bankruptcy court has discretion to retain jurisdiction over "related to" claims after dismissal of the underlying bankruptcy case. *In re Carraher*, 971 F.2d at 328; *In re Casamont Investors, Ltd.*, 196 B.R. at 522. In making its retention decision, the bankruptcy court typically must consider "judicial economy, fairness, convenience and comity." *In re Casamont Investors, Ltd.*, 196 B.R. at 522 (citing *In re Carraher*, 971 F.2d at 328).

Here, the bankruptcy court's ruling and the underlying facts amply supported the bankruptcy court's decision to dismiss the adversary proceeding in favor of further proceedings in the state court foreclosure action. Raybould did not dispute (and has not disputed) the following facts, on which the bankruptcy court relied:

- the debtor previously asserted the same or similar claims in the state court foreclosure action, in the form of counterclaims and third party

---

[11] "Related to" claims are those that do not invoke a right created by the Bankruptcy Code and can exist outside of a bankruptcy case but whose outcome nonetheless might impact the debtor or the estate. *See Maitland v. Mitchell (In re Harris Pine Mills)*, 44 F.3d 1431 (9th Cir.1995) (citing *Eastport Assocs. v. City of Los Angeles (In re Eastport Assocs.)*, 935 F.2d 1071, 1076-77 (9th Cir.1991)); *Wilshire Courtyard v. Cal. Franchise Tax Bd. (In re Wilshire Courtyard)*, 729 F.3d 1279, 1287 (9th Cir.2013). The claims Raybould asserted in his adversary proceeding all were "related to" claims.

claims;

- the claims for relief asserted in the adversary proceeding only concerned the parties' rights, liabilities and interests under nonbankruptcy law – predominantly state law;

- the state court had presided over the foreclosure action, and Raybould's counterclaims and third party claims, for a number of years, and apparently had ruled on them, leaving only the judgment to be entered;

- in contrast, the adversary proceeding barely had gotten under way.

In light of these undisputed facts, the considerations of judicial economy, fairness, convenience and comity, all militated strongly against the bankruptcy court retaining jurisdiction over the adversary proceeding. In both the bankruptcy court and on appeal, Raybould has failed to offer any explanation why these facts either are wrong or do not support the court's dismissal.

In his argument on appeal, Raybould focuses almost exclusively on the belated role of U.S. Bank in this matter as Chase Bank's alleged successor in interest. Raybould points out that U.S. Bank is not a party to the state court foreclosure action and was not named as a party in his counterclaims and third party claims. Raybould further asserts that there are no documents in the public record reflecting U.S. Bank's claimed status as the alleged current noteholder or as the alleged successor to Chase Bank.

Raybould maintains that it is implausible that any creditor would acquire an interest in the subject note or deed of trust following the granting of summary judgment in Chase Bank's favor in the foreclosure action. Raybould also complains that the proof of claim U.S. Bank filed does not specify which Chase entity U.S. Bank allegedly acquired its interest from.

Based on these concerns, Raybould contends that the bankruptcy court should have retained the adversary proceeding, granted him leave to amend, and permitted him to state new claims against U.S. Bank as a new defendant. He also contends that the bankruptcy court violated his due process rights when it suspended prosecution of the adversary proceeding pending the outcome of the October 18, 2017 hearing. According to Raybould, the bankruptcy court unfairly and wrongly denied him the opportunity to bring U.S. Bank into the adversary proceeding and to seek relief against it.

These arguments have no merit. His contentions fail to explain why, to the extent he believed he had important rights to vindicate against U.S. Bank, those rights could not be fairly and efficiently addressed in the state court action. Moreover, none of his contentions remotely affect the considerations of judicial economy, fairness, convenience and comity that strongly militated against the bankruptcy court retaining jurisdiction over the adversary proceeding. Simply put, Raybould's contentions do not persuade us that the bankruptcy court abused its discretion when it

decided it would not retain jurisdiction over the adversary proceeding and dismissed it.

## CONCLUSION

For the reasons set forth above, we AFFIRM the bankruptcy court's dismissal of Raybould's bankruptcy case and the dismissal of his adversary proceeding.