NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: ) | BAP No.   CC-12-1398-KiPaTa |
| ) | |
| MARSHALL SAMUEL SANDERS, ) | Bk. No.   8:11-24594-ES |
| ) | |
| Debtor. ) | |
| _____ ) | |
| ) | |
| MARSHALL SAMUEL SANDERS, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | **M E M O R A N D U M**[1] |
| ) | |
| UNITED STATES TRUSTEE, ) | |
| ) | |
| Appellee. ) | |
| _____ ) | |

Submitted Without Oral Argument
on March 22, 2013[2]

Filed - April 11, 2013

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Erithe A. Smith, Bankruptcy Judge, Presiding

Appearances:   Appellant Marshall Samuel Sanders pro se on brief;
Nancy S. Goldenberg, Esq. and Robert J. Schneider,
Jr., Esq. on brief for appellee Peter C. Anderson,
United States Trustee.

Before: KIRSCHER, PAPPAS, and TAYLOR, Bankruptcy Judges.

---

[1] This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may have
(see Fed. R. App. P. 32.1), it has no precedential value. See 9th
Cir. BAP Rule 8013-1.

[2] On January 31, 2013, the Panel unanimously determined that
this appeal was suitable for submission on the briefs and record
without oral argument pursuant to Fed. R. Bankr. P. 8012.

Appellant, chapter 11[3] debtor Marshall Samuel Sanders ("Sanders"), appeals an order from the bankruptcy court which: (1) dismissed his bankruptcy case; (2) entered judgment in favor of appellee, United States Trustee Peter C. Anderson ("UST"), for unpaid quarterly fees in the amount of $2,277.86; and (3) dismissed all pending adversary proceedings. We AFFIRM the dismissal of the chapter 11 case and the adversary proceedings. We also AFFIRM the bankruptcy court's decision to award the UST quarterly fees, but we modify the amount awarded to $977.06.[4]

We begin by noting that Sanders's opening brief fails to set forth the facts of this appeal. His brief is also rife with other deficiencies. Although it contains a "Table of Contents" and a "Table of Authorities," these take up fifteen of the brief's seventeen pages, and nothing stated within those pages corresponds to the arguments presented, such as they are. Sanders's brief also fails to provide a statement of the basis of appellate jurisdiction, a statement of the issues presented and the applicable standard of review, a proper statement of the case, a summary of the argument, and any citations to the record or any relevant authority, with the exception of string citations to some

---

[3] Unless specified otherwise, all chapter, code and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure are referred to as "Civil Rules."

[4] The UST admits the judgment should have been $977.06 and not $2,277.86. Given the record and the statement of missed quarterly payments and the accrual of interest determined by statute, we may correct what was essentially a "clerical error" and modify the award without remand. See United States v. Boyd, 208 F.3d 638, 649 (7th Cir. 2000), vacated on other grounds, 531 U.S. 1135 (2001)(correcting a clerical error without remand).

cases to support his argument about the dismissal of the adversary proceedings. See Rule 8010(a)(1)(A)-(F).

Pro se litigants are not excused from complying with the rules of appellate procedure. Clinton v. Deutsche Bank Nat'l Trust Co. (In re Clinton), 449 B.R. 79, 83 (9th Cir. BAP 2011) (citing King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987)("Pro se litigants must follow the same rules of procedure that govern other litigants."); Warrick v. Birdsell (In re Warrick), 278 B.R. 182, 187 (9th Cir. BAP 2002)). As such, we have the authority to strike Sanders's brief and dismiss his appeal for failing to comply with the rules of appellate briefing. See N/S Corp. v. Liberty Mut. Ins. Co., 127 F.3d 1145, 1146 (9th Cir. 1997) (striking appellant's brief, dismissing appeal, and stating: "In order to give fair consideration to those who call upon us for justice, we must insist that parties not clog the system by presenting us with a slubby mass of words rather than a true brief."); Cmty. Commerce Bank v. O'Brien (In re O'Brien), 312 F.3d 1135, 1136 (9th Cir. 2002).

Fortunately for Sanders, the UST has provided in his response brief a proper accounting of the facts and (nearly) complete excerpt of the record, including the required transcript. We are further persuaded to not dismiss because the UST has conceded the amount awarded for quarterly fees was in error and must be corrected. Accordingly, we exercise our discretion to review the merits of this appeal, keeping in mind that we can affirm on any basis supported by the record. Shanks v. Dressel, 540 F.3d 1082, 1086 (9th Cir. 2008).

////

-3-

## I. FACTUAL AND PROCEDURAL BACKGROUND

**A.    Events leading to the UST's motion to dismiss**

Sanders filed an individual chapter 11 bankruptcy case pro se on October 20, 2011.  In his schedules filed on October 26, 2011, Sanders disclosed an interest in two parcels of real property --- his residence in Santa Ana, California valued at $750,000 and secured by a total debt in the disputed amount of $1,825,000 (including a first lien held by Bank of America), and a rental property in Tustin, California valued at $300,000 and secured by a total debt of $961,500, of which $605,000 was disputed.  Sanders also listed $750,000 in disputed priority tax debt and a total of $1,235,000 in disputed general unsecured claims, which consists primarily of student loans.

On October 27, 2011, the bankruptcy court entered an order directing Sanders to attend a status conference on January 5, 2012, and to file a status report at least fourteen days beforehand (i.e., by December 23, 2011) that addressed, among other things, the reasons for filing a chapter 11, whether he was in compliance with all duties imposed on chapter 11 debtors under §§ 521, 1106 and 1107, and when a plan and disclosure statement would be filed ("First Status Order").  The First Status Order specifically warned that "failure to timely comply with any provisions of this order may be deemed consent to the conversion or dismissal of this case . . . ."

In response to the First Status Order, the UST filed a statement on December 27, 2011, informing the court that Sanders had not timely filed a status report or the monthly operating reports ("MORs") for October and November 2011.

-4-

Sanders belatedly filed the missing MORs and status report on January 5, 2012, the day of the hearing. After the hearing, the bankruptcy court entered an order on January 10, 2012, directing Sanders to file a plan and disclosure statement by March 30, 2012, and to file and serve an updated status report by April 12, 2012, for the continued status conference on April 19, 2012 ("Second Status Order"). The Second Status Order warned that "failure of Debtor to file a plan and disclosure statement by such date may result in the dismissal or conversion of this case upon submission of a declaration by the U.S. Trustee indicating Debtor's non-compliance with this provision."

Just prior to the January 5 status conference, Sanders filed a complaint against Bank of America and Chex Systems, Inc. ("Chex"), a credit reporting agency, asserting twenty-one claims regarding an alleged false credit report Sanders claimed caused him damages ("Chex Adversary Proceeding"). Although the complaint's cover sheet asserted twenty-one claims, the body of the complaint consisted of one page with nine sentences.

On January 30, 2012, LBS Financial Credit Union ("LBS") filed a nondischargeability complaint against Sanders seeking to except its debt from discharge under § 523(a)(6) for Sanders's alleged concealment and conversion of a vehicle in which LBS held a security interest ("Nondischargeability Adversary Proceeding").

In response to the Second Status Order, Sanders filed the court-ordered form plan for individual debtors on March 30, 2012; however, he failed to file the ordered disclosure statement. The form plan was blank, other than a statement near the end that "All legitimate creditors will be paid in full," with no explanation

regarding who these creditors were or how they were to be paid. On April 12, 2012, Sanders filed another status report indicating that he had already filed a complaint against Bank of America and Chex, and that he had filed a reorganization plan. Sanders stated that he intended to file various lien stripping motions and to possibly seek a hardship discharge for his student loans. He also contemplated filing an adversary complaint against certain parties for an apparent botched repossession of his vehicle because DNA, fingerprint, photographic, video and audio surveillance camera evidence revealed that these parties were liable for damages.

Prior to the continued April 19 status conference, the bankruptcy court issued a tentative ruling expressing "serious concerns about this debtor's ability to administer this bankruptcy estate." The court noted the following issues with Sanders's latest status report: (1) he had not filed the ordered disclosure statement; (2) the plan filed was blank; it designated no classes of creditors and stated only that legitimate claims would be paid, notwithstanding that several creditors had filed proofs of claim; (3) the plan was unconfirmable on its face; (4) Sanders's debt in excess of $4 million and negative income disclosed in his Schedule J raised a question as to the feasibility of funding a plan; and (5) Sanders had not discussed any cash collateral issues with respect to his rental property.

At the April 19 status conference, the bankruptcy court elaborated on its concerns about Sanders's ability to reorganize and the lack of progress made in his case. The court began by informing Sanders, in painstaking detail, about the deficiencies with his bankruptcy case. Sanders then asserted various reasons

as to why he had no creditors. The court pointed out, among other things, that despite Sanders's assertion, numerous proofs of claim had been filed, which were presumed valid until an objection had been filed and decided. The court then asked Sanders to explain why he was in a chapter 11 case attempting to reorganize if he had no creditors. Sanders had no real response. The UST stated that its office would proceed with a motion to dismiss or convert the case if Sanders failed to make progress toward a plan of reorganization.

Observing that the case had been sitting idle since its filing in October 2011, the bankruptcy court ordered a new deadline of May 18, 2012, for Sanders to file a disclosure statement and amended plan, scheduled another status conference for June 21, 2012, and directed Sanders to file an updated status report by June 14, 2012. The court warned Sanders that failing to file a disclosure statement and amended plan by May 18 would be grounds for dismissal or conversion of the case, but the UST would have to file the appropriate motion.

Sanders filed an amended plan on May 18, 2012, but failed to file the ordered disclosure statement until May 21, 2012. As with the first plan, the amended plan was blank. The disclosure statement was essentially blank as well, failing to contain any description of creditors or how they would be treated. Next to the sections "Sources of Payments under the Plan," "Liquidation Analysis" and "Feasibility," Sanders made "n/a" notations. As for funding the plan, Sanders stated:

> Because Debtor has no Creditors, no funds whatsoever are set aside for payment of any alleged Proofs of Claim. Instead Debtor has filed or will file an Adversary

-7-

Proceeding against each individual alleged Creditor that has filed a Proof of Claim.

## B. The UST's motion to dismiss

On June 14, 2012, the UST moved to dismiss Sanders's case for "cause" under § 1112(b) and to grant judgment in favor of the UST for unpaid quarterly fees ("Dismissal Motion"). Specifically, the UST contended he was entitled to dismissal because:

- Sanders lacked sufficient cash or liquid assets with which to pay scheduled priority tax debt of $750,000, which had to be paid in full within sixty months of the petition date pursuant to § 1129(a)(9)(C);

- Sanders had not filed a meaningful plan and disclosure statement containing proposed terms for creditors, notwithstanding a court-imposed deadline;

- Sanders had not filed MORs for March and April 2012;

- Sanders lacked ability to fund a plan, as the MORs he had filed through February 2012 showed a negative cash balance, and his schedules reported a negative monthly cash flow;

- Sanders had not made any progress toward reorganization despite being under chapter 11 protection for almost eight months; and

- Sanders had failed to pay quarterly fees as required by 28 U.S.C. § 1930(a)(6).

The Dismissal Motion was set for hearing on August 7, 2012. The UST's notice filed with the Dismissal Motion stated that, as per Local Rules 9013-1(f) and (h), Sanders's failure to file a written response to the motion within fourteen days of the hearing date could result in a waiver of his right to oppose the motion and allow the court to grant the requested relief.

Meanwhile, a hearing on a motion to dismiss filed in the Chex Adversary Proceeding was held on July 5, 2012. In its tentative ruling prior to the hearing, the bankruptcy court stated:

Grant motion to dismiss complaint as to both defendants

based upon the argument and legal analysis set forth in the Motion, which this court incorporates by reference herein. As complaint states no viable claim against either defendant, dismissal is with prejudice.

(See Tentative Ruling, July 5, 2012). At the Chex dismissal hearing, the bankruptcy court orally granted the motion to dismiss Sanders's complaint with prejudice.[5]

The hearing on the Dismissal Motion proceeded on August 7, 2012. Despite having many weeks to file a written opposition, Sanders did not timely file one, but instead appeared at the hearing and read into the record his single-sentence response, which he filed after the hearing:

I, Debtor, hereby oppose the motion to dismiss for both procedural and substantive reasons, that in the interest of time and expediency and because of the emergency nature of behind-the-scenes foreclosure of Debtor's property, Debtor is unable to elaborate on at this time but will do, shortly.

Hr'g Tr. (Aug. 7, 2012) 1:18-2:1. Sanders said he was not trying to escape his debts, but rather he was "simply trying to bring forward evidence or adversary proceedings to force any alleged creditor to show proof or promissory note or some evidence that I owe them." Id. at 3:20-23. The court responded by noting that Sanders's chapter 11 case had been languishing for ten months, and the only plan he filed did not provide for anything; that alone was grounds for dismissal. Sanders had also failed to show how he could fund a plan of reorganization or to address why he had not filed the required MORs. The court observed that the only thing

_____

[5] As explained more thoroughly below, no written order dismissing the Chex Adversary Proceeding was entered until August 21, 2012, the day the bankruptcy court entered the order on appeal.

going on in the case was an adversary proceeding Sanders had just filed that morning.[6]

After hearing argument from the parties, the bankruptcy court orally granted the Dismissal Motion, finding that Sanders had made no progress after ten months in chapter 11, had not filed a viable plan, had problems with his MORs, and had not addressed the issues set forth by the UST. Accordingly, the bankruptcy case was dismissed. The bankruptcy court further ruled sua sponte that the pending adversary proceedings were also dismissed, but informed Sanders that dismissal did not eliminate whatever claims he had against these entities or prevent him from seeking relief against them in state court or, if applicable, federal court. The bankruptcy court also granted judgment in favor of the UST for any unpaid quarterly fees.

Sanders filed a premature notice of appeal on August 7, 2012, which was deemed timely once the bankruptcy court entered its order on August 21, 2012 ("Dismissal Order"). Rule 8002(a). The Dismissal Order dismissed Sanders's chapter 11 case for cause under § 1112(b), granted a judgment in favor of the UST for $2,277.86 for quarterly fees due and owing, and dismissed "all pending adversary proceedings."

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

////

---

[6] This adversary was brought against Countrywide Bank, N.A. and was related to a disputed secured claim against Sanders's residence ("Countrywide Adversary Proceeding"). It asserted various state law and TILA claims. See Adv. No. 12-1418, dkt. 1.

# III. ISSUES

1.    Did the bankruptcy court abuse its discretion in dismissing Sanders's bankruptcy case?

2.    Did the bankruptcy court abuse its discretion in dismissing the pending adversary proceedings?

3.    Did the bankruptcy court err in awarding the UST unpaid quarterly fees?

# IV. STANDARDS OF REVIEW

A bankruptcy court's decision to dismiss a chapter 11 case under § 1112(b) is reviewed for an abuse of discretion. Marsch v. Marsch (In re Marsch), 36 F.3d 825, 828 (9th Cir. 1994); St. Paul Self Storage Ltd. P'ship v. Port Auth. (In re St. Paul Self Storage Ltd. P'ship), 185 B.R. 580, 582 (9th Cir. BAP 1995). Likewise, a bankruptcy court's decision to decline to exercise jurisdiction over related proceedings following dismissal of the underlying bankruptcy case is reviewed for an abuse of discretion. Davis v. Courington (In re Davis), 177 B.R. 907, 910-11 (9th Cir. BAP 1995). As with other fee awards, we review a court's award or denial of quarterly fees under 28 U.S.C. § 1930(a)(6) for an abuse of discretion. See generally Leichty v. Neary (In re Strand), 375 F.3d 854, 857 (9th Cir. 2004). A bankruptcy court abuses its discretion if it applied the wrong legal standard or its factual findings were illogical, implausible or without support in the record. TrafficSchool.com v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011).

////

////

////

-11-

# V. DISCUSSION

**A.    The bankruptcy court did not abuse its discretion when it dismissed Sanders's chapter 11 case.**

Under § 1112(b), "the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause . . . ." Section 1112(b)(1). Hence, if cause is present, the court must grant relief and determine whether dismissal, conversion, or appointment of a trustee or examiner is in the best interest of creditors and the estate. As the moving party to dismiss, the UST had to establish cause.

A non-exclusive list of what constitutes "cause" is found in § 1112(b)(4):

- substantial or continuing loss to or diminution of the estate with no reasonable likelihood of reorganization;

- failure to comply with a court order;

- unexcused failure to satisfy timely any filing or reporting requirement;

- failure to timely provide information reasonably requested by the United States Trustee;

- failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by the court; and

- failure to pay any fees or charges [which includes quarterly fees required under 28 U.S.C. § 1930(a)(6)].

Section 1112(b)(4)(A), (E), (F), (H), (J) and (K). The bankruptcy court has broad discretion in determining what constitutes "cause" adequate for dismissal under § 1112(b). See Pioneer Liquidating Corp. v. U.S. Trustee (In re Consol. Pioneer Mortg. Entities), 248 B.R. 368, 375 (9th Cir. BAP 2000). Where reorganization or rehabilitation is unrealistic or futile, a chapter 11 case may be

-12-

dismissed or converted even at its outset. <u>Johnston v. Jem Dev. Co. v. Johnston (In re Johnston)</u>, 149 B.R. 158, 162 (9th Cir. BAP 1992).

Sanders contends that his chapter 11 case should not have been dismissed because he "faithfully and diligently" prosecuted it, and the UST's Dismissal Motion was premature based on his failure to pay quarterly fees. We disagree. The record clearly supports the bankruptcy court's decision to dismiss this case as ample cause existed for doing so, besides the nonpayment of fees.

First, the MORs Sanders did file up through February 2012 revealed a negative cash balance, and that he lacked any other non-cash assets with which to fund a plan. His schedules reflected that both his residence and rental home – the only real assets in the case – were substantially over-encumbered with debt. Sanders's chapter 11 case was pending for ten months without any reasonable likelihood of reorganization. Despite being ordered twice to comply with court orders to file a substantive disclosure statement and plan compliant with §§ 1125 and 1129, he did nothing more than file the required form disclosure statements and plans in blank. He failed to even file a disclosure statement with his first plan, and he subsequently filed the second one three days past the imposed deadline. Sanders refused to provide for any payments to creditors, even though their proofs of claim were deemed valid due to his failure to lodge formal objections to any of the fourteen claims. <u>See</u> § 502(a). He also failed to seek a hardship discharge with respect to his alleged student loan debt of over $1 million. Sanders's conduct demonstrates that he had no intention to put forth a confirmable plan of reorganization.

-13-

Therefore, cause was established under § 1112(b)(4)(A), (E) and (J).

In addition, Sanders had unexcused failures to satisfy timely the monthly reporting requirements established in §§ 1107(a), 1106(a)(1) and 704(a)(7) and (8), as he filed MORs late through February 2012, and he failed to file any MORs for the months of March, April, May or June 2012. These failures established further cause under § 1112(b)(4)(F) & (H). Finally, although Sanders eventually paid the UST quarterly fees for the fourth quarter of 2011, he failed to pay any fees for the first, second and third quarters of 2012. This failure also established cause under § 1112(b)(4)(K).

Once "cause" was established, the bankruptcy court had to dismiss or convert Sanders's case, as the appointment of a trustee or examiner was pointless because he had no assets to administer and his estate was administratively insolvent. The only exception to conversion or dismissal would have been if the bankruptcy court specifically identified "unusual circumstances . . . that establish that such relief is not in the best interest of creditors and the estate." § 1112(b)(1). The bankruptcy court did not identify any such circumstances, and Sanders did not (and could not) meet his burden to show that any existed under § 1112(b)(2), one of which was a reasonable likelihood that a plan would be confirmed in a reasonable time. See In re Orbit Petroleum, Inc., 395 B.R. 145, 148 (Bankr. D. N.M. 2008)(upon finding cause burden shifts to opposing party to demonstrate that § 1112(b)(2) precludes relief under § 1112(b)(1)).

Admittedly, the record does not evidence that the bankruptcy

court engaged in the "balancing test" used to determine whether conversion or dismissal was in the best interests of creditors and the estate. See § 1112(b)(1). However, we can affirm on any basis supported by the record, and the record establishes that dismissal was appropriate. Shanks, 540 F.3d at 1086. As stated above, Sanders had no assets to administer and his case was administratively insolvent. The UST moved only to dismiss the case, no oppositions were filed by any creditors, and Sanders never asked the court to consider conversion to chapter 7. Sanders also failed to file a timely written opposition to the Dismissal Motion, which provided an independent procedural basis for dismissal. See Local Bankruptcy Rules 9013-1(f) and (h). Sanders does not assign error to the bankruptcy court for not converting his case to chapter 7, which he had already filed before this case.

In ten months, Sanders's creditors suffered losses while he did virtually nothing other than receive the protections of the bankruptcy stay while he prosecuted state law claims in what essentially were two-party lawsuits. Therefore, dismissal was appropriate and in the best interest of creditors. Accordingly, the bankruptcy court did not abuse its discretion in dismissing Sanders's bankruptcy case.

**B.     The bankruptcy court did not abuse its discretion in dismissing the pending adversary proceedings.**

The UST contends that the only pending adversary at the time the Dismissal Order was entered was the Countrywide Adversary Proceeding. This is not entirely correct. At the time of the hearing on the Dismissal Motion on August 7, 2012, the Chex

-15-

Adversary Proceeding had been orally dismissed with prejudice on July 5, 2012, for Sanders's failure to comply with the pleading requirements of Civil Rule 8, incorporated by Rule 7008. However, that proceeding was not "officially" dismissed by written order until August 21, 2012, in the Dismissal Order. Therefore, it appears to be subject to this appeal. Nonetheless, Sanders has not asserted any argument for how the bankruptcy court erred in dismissing the Chex Adversary Proceeding for the reasons that it did. As a result, he has waived any argument on this issue, and we do not consider it. City of Emeryville v. Robinson, 621 F.3d 1251, 1261 (9th Cir. 2010)(appellate court in this circuit "will not review issues which are not argued specifically and distinctly in a party's opening brief."). In any event, we fail to see how the bankruptcy court erred in dismissing a complaint under Civil Rule 8 that asserted twenty-one causes of action but consisted of only nine sentences. See Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-57 (2007). As a result, dismissal of this proceeding was appropriate.

Further, the Nondischargeability Adversary Proceeding was also pending at the time of the dismissal hearing and at the time the Dismissal Order was entered. For obvious reasons, Sanders does not dispute the dismissal of that action. In any event, an action seeking an exception to Sanders's discharge under § 523(a)(6) was rendered moot once the bankruptcy case was dismissed because Sanders would not be receiving a discharge. Thus, dismissal of it was appropriate.

Therefore, that leaves us with only the dismissal of the

Countrywide Adversary Proceeding to review.[7]

Bankruptcy courts have jurisdiction over all civil proceedings arising under title 11, or arising in or related to cases under Title 11. 28 U.S.C. § 1334(b). Here, the suit at issue involved claims primarily based on state law (quiet title, fraud, accounting) along with one TILA claim. None of the claims invoke a substantive right created by federal bankruptcy law, so they do not "arise under" Title 11. Eastport Assocs. v. City of L.A. (In re Eastport Assocs.), 935 F.2d 1071, 1076 (9th Cir. 1991). Similarly, as the bankruptcy court observed, because all of these claims could exist outside of bankruptcy, they do not "arise in" Title 11. Id. Therefore, at best, any jurisdiction the bankruptcy court had over Sanders's claims could only consist of "related to" jurisdiction.

"An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." Great W. Sav. v. Gordon (In re Fietz), 852 F.2d 455, 457 (9th Cir. 1988)(quoting Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984)); Linkway Inv. Co. v. Olsen (In re Casamont Investors, Ltd.), 196 B.R. 517, 521 (9th Cir. BAP 1996). Conceivably, the outcome of this proceeding could have altered Sanders's rights and liabilities, which could have impacted the

---

[7] Although Sanders attempts to assert various "arguments" about the merits of the Countrywide Adversary Proceeding in his Table of Contents, that issue is not before us on appeal because that proceeding was not dismissed on its merits. Therefore, we do not address it. Even if we could address it, Sanders has failed to properly brief the issue.

-17-

administration of his bankruptcy estate.  As a result, the bankruptcy court had related to jurisdiction over the Countrywide Adversary Proceeding.

Sanders appears to contend that the bankruptcy court was under the misapprehension that the Countrywide Adversary Proceeding did not survive the dismissal of his bankruptcy case, and the court erred for dismissing it on that basis.  Both the Ninth Circuit and this Panel have held that bankruptcy courts are not automatically divested of jurisdiction over related cases when the underlying bankruptcy case has been dismissed.  Carraher v. Morgan Elecs., Inc. (In re Carraher), 971 F.2d 327, 328 (9th Cir. 1992); In re Casamont Investors, Ltd., 196 B.R. at 525.  However, a review of the transcript from August 7, 2012, reveals that the bankruptcy court was simply declining to exercise jurisdiction over clearly what were claims based primarily in state law that could be heard in state or federal court.

The bankruptcy court is afforded discretion to determine whether to retain jurisdiction over adversary proceedings when the underlying bankruptcy case is dismissed and may do so "when judicial economy, convenience, fairness and comity favor retention."  In re Casamont Investors, Ltd., 196 B.R. at 522, 525.  The weighing of these factors is discretionary.  Id. at 522 n.3.  While the bankruptcy court did not expressly articulate each of these factors on the record, findings the court did make and the record supports its decision to not retain jurisdiction over the

Countrywide Adversary Proceeding.[8]

Judicial economy. The Countrywide Adversary Proceeding had just been filed the day of the dismissal hearing on August 7, 2012. This factor clearly weighs in favor of not retaining jurisdiction. Compare In re Casamont Investors, Ltd., 196 B.R. at 523 (adversary proceeding pending two months at time of dismissal did not favor retention; retention of jurisdiction is improper when the initiation of the dispute is recent), with In re Carraher, 971 F.2d at 327 (adversary proceeding pending six years at time of dismissal weighed in favor of retention).

Convenience. The Countrywide Adversary Proceeding had been pending only one day when Sanders's bankruptcy case got dismissed. Further, as the bankruptcy court pointed out, nothing prevented Sanders from pursuing his claims in state or, if applicable, federal court. The inconvenience of having to re-file a complaint in state court does not warrant retention of jurisdiction. In re Casamont Investors, Ltd., 196 B.R. at 524. This factor weighs in favor of not retaining jurisdiction.

Fairness. Again, because the proceeding had been pending only one day, the parties were not prejudiced by dismissal. See In re Carraher, 971 F.3d at 328 (proceeding dragged on for six years); Fid. & Deposit Co. of Md. v. Morris (In re Morris), 950 F.2d 1531, 1534 (11th Cir. 1992)(more than four years); Smith

_____

[8] Unfortunately, neither party included a copy of the complaint in the record for our review. We therefore exercised our discretion to obtain a copy of it from the bankruptcy court's electronic docket. See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957-58 (9th Cir. 1989); Atwood v. Chase Manhattan Mortg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

-19-

v. Commercial Banking Corp. (In re Smith), 866 F.2d 576, 580 (3d Cir. 1989)(more than four years).  This factor also disfavors retention.

Comity.  Since nearly all of Sanders's claims were based on state law, and because no bankruptcy issues were present, comity weighs in favor of dismissal.

All of the above factors weighed in favor of the bankruptcy court declining to retain jurisdiction over the Countrywide Adversary Proceeding.  Accordingly, it did not abuse its discretion in dismissing it.

**C.  The bankruptcy court did not err in granting the UST judgment for unpaid quarterly fees, but we must modify the amount awarded.**

The Code authorizes the United States Trustee to collect mandatory quarterly fees from a party who files a chapter 11 bankruptcy case.  See 28 U.S.C. § 1930(a)(6); Tighe v. Celebrity Home Entm't, Inc. (In re Home Entm't, Inc.), 210 F.3d 995, 998 (9th Cir. 2000).  The quarterly fee is calculated according to the amount of disbursements to creditors during each quarter of the debtor's case.  Id.  If a chapter 11 debtor makes zero disbursements during the quarter, as was the case here, the minimum fee the debtor must pay is $325 for that quarter.  See 28 U.S.C. § 1930(a)(6).

Sanders failed to pay quarterly fees for the first, second and third quarters of 2012.  Sanders does not dispute that he owes the fees, but contends only that the UST was awarded too much. The UST agrees and admits that the correct amount due and payable by Sanders is $977.06, which comprises the $325 minimum fee for the three unpaid quarters of 2012, plus statutory interest of

-20-

$2.06 pursuant to 31 U.S.C. § 3717.

## VI. CONCLUSION

Based on the foregoing reasons, we AFFIRM the dismissal of the chapter 11 case and the adversary proceedings. We further AFFIRM the bankruptcy court's decision to award the UST quarterly fees, but we modify the amount awarded to $977.06.